UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY;  and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br><br> Plaintiffs, <br><br> v. <br><br> LINT CHIROPRACTIC P.C.; MI MEDICAL MANAGEMENT, LLC; DURAMED MI, LLC, SUPPLIES PLUS MI, LLC; DIAGNOSTIC CHIROPRACTIC MI, P.C.; EXCEL MEDICAL GROUP, PLC; AS MEDICAL GROUP, PLC; and ROBERT SUPER, D.C. <br><br> Defendants. | Case No. 4:23-cv-10904-FKB-DRG <br><br> Hon. F. Kay Behm <br> Mag. Judge David R. Grand |

**DEFENDANTS LINT CHIROPRACTIC, P.C., MI MEDICAL MANAGEMENT, LLC, SUPPLIES PLUS MI, LLC, DIAGNOSTIC CHIROPRACTIC, P.C., AND ROBERT SUPER, D.C.'S <u>MOTION TO DISMISS</u>**

Defendants Lint Chiropractic P.C., MI Medical Management, LLC, Supplies Plus MI, LLC, Diagnostic Chiropractic, P.C., and Robert Super D.C. (collectively "Movants"), by and through counsel, hereby move for dismissal of all claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Local Rule 7.1(a), counsel for

1

Movants advised counsel for Plaintiffs that Movants intended to move for dismissal of Plaintiffs' claims against Movants under Fed. R. Civ. P. 12(b)(6). Counsel for Movants requested, but did not obtain, concurrence in the relief sought herein.

This Motion is supported by the accompanying Brief.

WHEREFORE, Movants respectfully request dismissal of all claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  July 17, 2023

Respectfully submitted,

**FINK BRESSACK**

By:    /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
*Attorneys for Defendants Lint*
*Chiropractic, P.C., Robert Super,*
*D.C., MI Medical Management, LLC,*
*Diagnostic Chiropractic MI, P.C., and*
*Supplies Plus MI, LLC*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY;  and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | Case No. 4:23-cv-10904-FKB-DRG<br><br>Hon. F. Kay Behm<br>Mag. Judge David R. Grand |
| Plaintiffs, | |
| v. | |
| LINT CHIROPRACTIC P.C.; MI MEDICAL MANAGEMENT, LLC; DURAMED MI, LLC, SUPPLIES PLUS MI, LLC; DIAGNOSTIC CHIROPRACTIC MI, P.C.; EXCEL MEDICAL GROUP, PLC; AS MEDICAL GROUP, PLC; and ROBERT SUPER, D.C. | |
| Defendants. | |

**DEFENDANTS LINT CHIROPRACTIC, P.C., MI MEDICAL MANAGEMENT, LLC, SUPPLIES PLUS MI, LLC, DIAGNOSTIC CHIROPRACTIC, P.C., AND ROBERT SUPER, D.C.'S <u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

i

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED......................................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES........................... vii

INDEX OF AUTHORITIES.................................................................................... viii

INTRODUCTION ....................................................................................................1

ARGUMENT ............................................................................................................5

  I.  The RICO Claims Should be Dismissed Pursuant to
     Fed. R. Civ. P. 12(b)(6) ...................................................................................5

    A.  Legal Standards ........................................................................................5

    B.  The Complaint Does Not Plausibly Allege a § 1962(c) Violation by
       Movants................................................................................................6

      1.  § 1962(c) Standards ...........................................................................6

      2.  The Complaint Does Not Allege Facts Sufficient to Meet the § 1962(c)
         Standards ............................................................................................7

    C.  Allstate Lacks Standing Because it Has not Paid Movants a
       Single Penny.........................................................................................14

    D.  The Complaint Does Not Plausibly Allege a § 1962(d) Violation..............16

  II.  The State Law Claims (Common Law Fraud, Civil Conspiracy, Payment
     Under Mistake of Fact, Unjust Enrichment, and Declaratory Relief) Should
     be Dismissed .................................................................................................17

    A.  The Court Should Decline Jurisdiction Over the State Law Claims ..........17

    B.  The Common Law Fraud and Civil Conspiracy Claims Should be
       Dismissed for Failure to State a Claim .......................................................18

    C.  The Payment Under Mistake of Fact Claim Should be Dismissed for
       Failure to State a Claim................................................................................18

    D.  The Unjust Enrichment Claim Should be Dismissed for Failure to State a
       claim............................................................................................................19

    E.  The Declaratory Judgment Claim Must be Dismissed because the
       Substantive Claims Fail ..............................................................................19

  III.  The Claims Should be Dismissed for Other Miscellaneous Reasons ...........20

A.  Jackson v. Sedgwick .......................................................................20

B.  *Burford* Abstention .......................................................................23

C.  Reverse Preemption.........................................................................24

CONCLUSION ...........................................................................................25

## STATEMENT OF THE ISSUES PRESENTED

1.     Should the RICO claims against Movants under § 1962(c) be dismissed for failure to plausibly allege their "participation" in the enterprise as that term is used in the statutory proscription against participating in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity, where they are unable to allege any relationship between Movants and other named Movants?

Movants Answer: "Yes"

2.     Should the RICO claims against Movants under § 1962(c) be dismissed for failure to allege that Defendants committed any predicate acts of fraud with the particularity required by Rule 9(b), where Plaintiffs do not identify a single payment made to Movants?

Movants Answer: "Yes"

3.     Should the RICO claims against Movants under § 1962(d) be dismissed for failure to plausibly allege they agreed to the commission of RICO predicate acts where Plaintiffs do not identify a single payment made to Movants?

Movants Answer: "Yes"

4.     Should the Court follow the "strong presumption" against exercising jurisdiction over the state law claims, where the federal RICO claims are not viable against Movants?

Movants Answer: "Yes"

iv

5.     Should the claims against Movants be dismissed consistent with the reasoning of *Jackson v. Sedgwick Claims Management Services, Inc.,* 731 F.3d 556 (6th Cir. 2013) (*en banc*), and pursuant to the doctrines of *Burford* abstention and reverse preemption?

Movants Answer: "Yes"

6.     Should the common law fraud claim be dismissed because Plaintiffs fail to allege the elements of fraud with the requisite particularity and where Plaintiffs do not identify a single payment made to Movants?

Movants Answer: "Yes"

7.     Should the civil conspiracy claim be dismissed because Plaintiffs fail to allege the underlying fraud with the requisite particularity, where Plaintiffs fail to allege facts to support a claim of common ownership or control and where Plaintiffs do not identify a single payment made to Movants?

Movants Answer: "Yes"

8.     Should the count for payment under mistake of fact be dismissed for failure to state a claim, where Plaintiffs do not identify a single payment made to Movants?

Movants Answer: "Yes"

9.     Should the unjust enrichment claim be dismissed for failure to state a claim, where Plaintiffs do not identify a single payment made to Movants?

Movants Answer: "Yes"

10.     Should the declaratory judgment count be dismissed, where Plaintiffs'
underlying substantive claims fail as a matter of law?

Movants Answer: "Yes"

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(6)

18 U.S.C. § 1962(c)

18 U.S.C. § 1962(d)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Allstate Ins. Co. v. Advanced Health Professionals, P.C.*,
  256 F.R.D. 49 (D. Del. 2008) ...............................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................5

*Beck v. Prupis*, 529 U.S. 494 (2000) .....................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................... 5, 8, 18

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000)...............16

*Burford v. Sun Oil Co.,* 319 U.S. 315 (1943)...........................................23

*Cochran v. VendMasters, Inc.*,
  3:04CV024, 2006 WL 2709777 (S.D. Ohio Sept. 20, 2006) ................................6

*Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993)...................................10

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
  528 F.3d 1001 (8th Cir. 2008) .............................................................8

*DeLorean v. Cork Gully,* 118 B.R. 932 (E.D. Mich. 1990).....................................5

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000).............17

*Goren v. New Vision International, Inc.,* 156 F.3d 721 (7th Cir.1998)....................6

*Gotham Prints, Inc. v. American Speedy Printing Ctrs., Inc.*, 863 F. Supp 447
  (E.D. Mich 1994) ..........................................................................11

*Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832 (6th Cir. 2008)......................6, 9

*Grantham & Mann, Inc. v. Am. Safety Prods*., Inc., 831 F.2d 596 (6th Cir. 1987) .15

*In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583 (E.D. Mich. 1985) ...........6

*Int'l Ass'n of Machinists and Aerospace Workers v. Tenn. Valley Auth.*,
  108 F.3d 658 (6th Cir. 1997)..............................................................20

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
   731 F.3d 556 (6th Cir. 2013) .................................................................... 20, 21, 22

*Johnson v. Botsford Gen. Hosp.*, 748 N.W.2d 907 (Mich. Ct. App. 2008).............12

*Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797 (7th Cir. 2008) ...................5

*Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224 (3d Cir. 2007) ..........17

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988) .............18

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992).................................4

*Morris Pumps v. Centerline Piping, Inc.*,
   273 Mich. App. 187, 729 N.W.2d 898 (2006) ......................................................19

*Muci v. State Farm Mut. Auto. Ins. Co.*, 732 N.W.2d 88 (Mich. 2007)...................24

*Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) ..17

*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783 (6th Cir. 2008)...............7

*Psychosocial Service Assoc's, P.C. v. State Farm Mut. Auto Ins. Co.*,
   761 N.W.2d 716 (Mich. Ct. App. 2008) ..............................................................13

*Reffitt v. Reffitt, et al.*, 802 F. App'x 913 (6th Cir. 2020)..........................................3

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ......................................................6, 9

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505 (6th Cir. 2010) ...24

*Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan*,
   300 F.3d 711 (6th Cir. 2002) ...............................................................................23

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ...............................................14

*Stone v. Kirk*, 8 F.3d 1079 (6th Cir. 1993)............................................................6, 9

*U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*,
   501 F.3d 493 (6th Cir. 2007) ...............................................................................14

*United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013)..............................7

*United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008) ............................................7

*Vild v. Visconsi,* 956 F.2d 560 (6th Cir. 1992) ...................................................5

*Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ...............................................................................16

*Wuliger v. Liberty Bank, N.A.*, No. 3:02 CV 1378, 2004 WL 3377416 (N.D. Ohio Mar. 4, 2004)........................6

**Statutes**

15 U.S.C. § 1012(a) ....................................................................................24

15 U.S.C. § 1012(b). ...................................................................................24

18 U.S.C. § 1962(c) ............................................................................... passim

18 U.S.C. **§** 1962(d) ............................................................................. 16, 17

Mich. Comp. Laws § 500.3105................................................................21

Mich. Comp. Laws § 500.3107....................................................... 12, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................5

Fed. R. Civ. P. 9(b) ........................................................................... passim

# INTRODUCTION

This lawsuit is Plaintiffs' (collectively, "Allstate") and King, Tilden, McEttrick's ("KTM") latest attempt to bully No-Fault providers with the threat of RICO treble damages, in order to avoid paying legitimate claims. Defendants Lint Chiropractic P.C., MI Medical Management, LLC, Supplies Plus MI, LLC, Diagnostic Chiropractic, P.C., and Robert Super D.C. (collectively "Movants") are chiropractic providers who cared for Allstate insureds who were injured in motor vehicle accidents. Allstate filed this civil RICO lawsuit against Defendants, alleging (in a conclusory fashion) a broad conspiracy to defraud the insurance company through the Michigan No-Fault Act.

Incredibly, Allstate has not paid a single penny to Movants for any of their claims. Nevertheless, Allstate brings this frivolous lawsuit to try to force Movants to release almost $5,000,000 in legitimate (unpaid) claims for services provided to individuals injured in motor vehicle accidents. Allstate falsely claims in general terms that it made payments related to Movants' billings described in the Complaint, demanding restitution and treble damages, but, critically, Allstate does not (and cannot) allege a single payment made by Allstate to any of the Movants. This

egregious abuse of the judicial system to try to intimidate Movants should not be countenanced by this Court.[1]

The basic underpinning of Allstate's claims is a false allegation that there is a conspiracy involving Movants and the other Defendants. Movants have no ownership interest in the other Defendants; Movants have not controlled or managed the other Defendants; and Movants have no interest in the profits, losses, or revenues of the other Defendants. Other than conclusory allegations which are insufficient to survive a 12(b)(6) challenge, Allstate can provide no evidence to the contrary. There is absolutely no plausible factual basis for Plaintiffs' claims regarding an alleged conspiracy involving Movants and the other Defendants.

Consistent with Allstate's and KTM's pattern and practice, Allstate filed this frivolous lawsuit seeking massive damages and extraordinary relief in an effort to intimidate Movants into abandoning their right to collect for the services they have rendered to Allstate's insureds.

---

[1] This motion seeks dismissal under Fed. R. Civ. P. 12(b)(6). Movants are not asking the Court to rule on the absence of any genuine issue of material fact. Instead, the facts are mentioned to highlight the missing allegations in the Complaint. Allstate and KTM were put on notice of the deficiencies of their claims, with a Rule 11 letter, attached hereto as Exhibit 1. Notwithstanding that letter, which put Allstate and KTM on notice of their failure to plead and their inability to prove the most basic elements of these claims, they have made no attempt to withdraw or amend their defective pleading. Allstate and its counsel should face severe sanctions, but that will be the subject of later motions. For now, Movants first seek dismissal of this case for failure to state a cause of action.

Unfortunately, this behavior by Allstate and KTM is not surprising; rather, it is par for the course. In a recent RICO suit filed by Allstate and KTM (then known as Smith & Brink), in which undersigned counsel represented a pharmacy targeted by Allstate and KTM, Magistrate Judge Elizabeth Stafford disqualified KTM from representing Allstate after KTM attorneys "engaged in unethical conduct" and one KTM attorney "lied under oath." *Allstate Insurance Co., et al v. ZMC Pharmacy, LLC, et al*, Case No. 2:19-cv-13721-LVP-EAS, ECF No. 134, PageID.4884. KTM attorneys had substantive communications with a represented party outside the presence of his counsel, in an attempt to bully the represented party into settling the lawsuit on terms favorable to Allstate. *Id.* KTM attempted to intimidate the party by bragging about Allstate's expert, by scoffing at the possibility that the case could be dismissed by motion, by claiming that certain irrelevant facts might prejudice a jury against the defendant and by telling the party that he would be "under [Allstate's] radar" if he would just bill less. *Id.* at PageID.4885-86, 4888, 4893, 4896. The instant lawsuit is a cynical continuation of Allstate and KTM's modus operandi: detonate the litigation equivalent of a thermonuclear device (*see Reffitt v. Reffitt, et al.*, 802 F. App'x 913, 919 (6th Cir. 2020) ("A civil RICO claim is an unusually potent weapon—the litigation equivalent of a thermonuclear device. For this reason, there is a strong temptation for plaintiffs to raise a RICO claim, even when the claim is

3

obviously frivolous")[2], simply because Allstate and KTM believe Movants charge too much for their services.

The real RICO conspiracy is being perpetrated by Allstate and KTM. Allstate is a multibillion-dollar group of insurance companies, collecting hundreds of millions of dollars in annual premiums from Michigan drivers, with no intention of paying legitimate claims. Many Michigan drivers believe Allstate's promise that they are "in good hands with Allstate," but, when Allstate's insureds are injured, those good hands often turn into unyielding fists. Allstate routinely denies proper claims and forces victims of automobile accidents and their medical providers to file lawsuits to collect for what should be routine medical bills. When Allstate fails to get its way in state court, Allstate and KTM bring RICO cases to try to force medical providers to forfeit their legitimate claims. This is one such case; there is simply no legitimate basis for the claims raised against Movants in this Complaint, and the Complaint should be dismissed.

---

[2] *See also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour….The widespread abuse of civil RICO stems from the fact that all modern business transactions entail use of the mails or wires—giving plaintiffs a jurisdictional hook—and the fact that RICO offers a far more generous compensation scheme than typically available in state court.") (internal citations omitted).

# ARGUMENT

## I.     The RICO Claims Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

### A. Legal Standards

Under Fed. R. Civ. P. 12(b)(6), a court should dismiss a claim where a plaintiff fails to plead facts sufficient to state a claim upon which relief can be granted. The allegations must consist of more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations that are mere conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-34 (2009).

The specificity mandated by Rule 9(b) is crucial in a RICO case where a defendant is accused of fraudulent conduct based on alleged criminal activity and threatened with treble damages. *DeLorean v. Cork Gully,* 118 B.R. 932, 940 (E.D. Mich. 1990) (citations omitted); *see also Vild v. Visconsi,* 956 F.2d 560, 567 (6th Cir. 1992); *and see Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (warning against allowing a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence."). "This means that conclusory allegations that [a defendant's] conduct

was fraudulent are insufficient. Instead, the complaint must describe the conduct that constitutes the fraud with some specificity." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 591 (E.D. Mich. 1985).

### B. The Complaint Does Not Plausibly Allege a § 1962(c) Violation by Movants

#### 1. § 1962(c) Standards

Under 18 U.S.C. § 1962(c), a defendant must have participated in the enterprise to be liable. *Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008). In *Reves v. Ernst & Young*, the Court held that the word "participate," as used in the RICO context, has a narrower meaning than "aid and abet." 507 U.S. 170, 178-79 (1993).[3] To "participate" in the affairs of a RICO enterprise, "one must have some part in directing those affairs." *Stone v. Kirk*, 8 F.3d 1079, 1091-92 (6th Cir. 1993). One cannot be liable under § 1962(c) unless one has participated, "in the operation or management of the enterprise itself." *Id.* (citation omitted). "Mere participation in the activities of the enterprise or performing services for an enterprise is not sufficient." *Cochran v. VendMasters, Inc.,* 3:04CV024, 2006 WL 2709777 at * 5 (S.D. Ohio Sept. 20, 2006) (*quoting Goren v. New Vision International, Inc.,* 156 F.3d 721, 727 (7th Cir.1998)). The defendant must be

---

[3] There is no private right of action under RICO for "aiding and abetting." *See*, *e.g.*, *Wuliger v. Liberty Bank, N.A.*, No. 3:02 CV 1378, 2004 WL 3377416, at *10 (N.D. Ohio Mar. 4, 2004).

plausibly accused of conducting the *enterprise's* affairs, not merely its own. *See United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013). The Sixth Circuit has clarified that, "[a]lthough *Reves* does not explain what it means to have some part in directing the enterprise's affairs, it can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2008) (quoting *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (emphasis omitted).

### 2. The Complaint Does Not Allege Facts Sufficient to Meet the § 1962(c) Standards

Setting aside the utter falsity of Allstate's allegations against Movants, even if all these allegations were accepted as true, the Complaint would not state an actionable claim against Movants. The vague and conclusory nature of the Complaint's allegations demonstrate that this is nothing more than a dispute over the reasonableness of bills submitted by Movants to Allstate. The question of what constitutes an appropriate charge under Michigan's No-Fault Act is an issue of state law and has no place in a RICO lawsuit.

**Allstate's § 1962(c) claim fails because Allstate does not adequately allege the existence of a RICO enterprise.** Allstate is required to allege the commission of at least two predicate acts to state a claim under § 1962(c). *Brown v. Cassens Transport Co.*, 546 F.3d 347, 355 (6th Cir. 2008). To adequately plead a claim under

§ 1962(c), a plaintiff must show how each defendant committed at least two predicate acts. *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc*., 528 F.3d 1001, 1027-28 (8th Cir. 2008), *cert denied*, 129 S.Ct. 1000, 173 L. Ed. 2d 2009).

Here, the allegations of an "enterprise" are boilerplate and conclusory and fail to adequately allege a RICO enterprise. More specifically, Allstate lists groups of Movants as an "enterprise" and then claims that individual defendants were responsible for the enterprise's actions. *See, e.g.* Compl. ¶¶ 412-413, 416. Allstate repeatedly makes the same boilerplate allegation regarding an alleged "common purpose": "defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations." Compl. ¶ 469. Allstate also repeatedly alleges—without any basis in fact—that "Super owned, managed, and controlled" nearly all of the alleged "enterprises." Compl. ¶ 416, 437, 438, 477.

These allegations are nothing more than a "formulaic recitation of the elements" of a RICO claim; this is insufficient to allege any plausible enterprise under *Twombly*. There are no non-conclusory allegations that these independent entities conspired with each other. Instead, Allstate vaguely alleges that each provider rendered services to an insured and submitted a bill to Allstate, which Allstate calls fraud because it does not want to pay. These allegations simply

8

demonstrate that each Movant entity acted in its own self-interest by treating patients and submitting bills to Allstate. The Complaint merely alleges that each Movant conducted its own affairs, which is insufficient to state a claim under § 1962(c).

**Allstate makes similar conclusory allegations regarding the "conduct" of the "enterprise."** For a defendant to be liable under 18 U.S.C. § 1962(c), that defendant must have participated in the enterprise. *Grange Mut. Cas. Co.,* 290 F. App'x at 835. To "participate" in the RICO conduct means more than to "aid and abet." *Reves,* 507 U.S. at 178-79. The plaintiff has the burden of showing the defendant had "some part in directing…affairs," and Allstate fails to do so. *Stone v. Kirk,* 8 F.3d 1079, 1091-92 (6th Cir. 1993). Instead, like its enterprise allegations, Allstate uses boilerplate language to allege control of the supposed enterprise. Allstate lumps together large groups of Defendants and claims that they all "operated and conducted" the alleged enterprise. Compl. ¶¶ 11, 15, 19, 23, 27, 31, 35, 38. However, aside from unremarkable and insignificant allegations that the Movant entities did business with each other, there are no plausible allegations that they worked in concert as contemplated under the RICO statute.

Allstate repeatedly alleges "defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations." Compl. ¶ 469,

489, 508, 527, 546. Allstate does not specify the conduct they are referring to with these boilerplate, conclusory allegations. Any reference to conduct by Movants fails to demonstrate 1) that it was plausibly fraud  and 2) that it was done in service of an enterprise. These allegations are insufficient as a matter of law because they are conclusions without any supporting facts, and they certainly do not show that Movants had "some part in directing…affairs." *Stone,* 8 F.3d at 1091-92.

**The Complaint also does not adequately allege a violation of § 1962(c) because it fails to allege the commission of predicate acts of fraud with the specificity required by Rule 9(b).** To comply with Rule 9(b), a plaintiff must "allege the time, place, and contents of the alleged misrepresentations on which he or she relied; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

Allstate's allegations of fraud fail to satisfy this standard. Allstate repeatedly presents boilerplate, conclusory claims of alleged "fraud." *See, e.g.*, Compl. ¶¶ 381-403, 413, 420, 434, 440, 454, 460, 474, 480, 494, 499, 513, 518, 532, 537 (generically referring to Movants' "scheme to defraud" and "fraudulently seeking payment").  However, Allstate fails to allege the time or the place that these representations were supposedly made.

For example, Allstate claims that Movants "Lint and Super submitted altered, forged, and fabricated medical records," (Compl. ¶¶ 138-140) but fails to identify

the time or place that these allegedly fraudulent medical records were submitted. Furthermore, aside from the conclusory allegations regarding every bill identified in the exhibits to the Complaint, Allstate fails to sufficiently plead supposed misrepresentations made by Movants under 9(b). Allstate offers some exemplar allegations, but there is no sufficiently pled claim of fraudulent conduct by Movants. Allstate makes several logical leaps to suggest that Movant Diagnostic Chiropractic engaged in fraudulent conduct. Allstate alleges that Diagnostic Chiropractic's administration of "ROM and muscle testing[, which] are used to assess baseline levels (1) to guide clinic plans and (2) to gauge improvement over the course of treatment" was "medically unnecessary," because when one patient was being treated by Diagnostic Chiropractic and another treatment facility, the second facility was allegedly not aware of Diagnostic Chiropractic's administration of ROM. Compl. ¶ 254; 268-271. Allstate concludes without plausible factual allegations that the Movant committed fraud. *Id.*

The Complaint therefore fails to satisfy Rule 9(b) regarding the predicate acts of mail fraud. Allstate has failed to plead "specific allegations as to *which* defendant caused *what* to be mailed, and *when* and *how* each mailing furthered the fraudulent scheme." *Gotham Prints, Inc. v. American Speedy Printing Ctrs., Inc.*, 863 F. Supp 447, 458 (E.D. Mich 1994) (parentheticals omitted; emphasis in original). There is simply no causal relationship identified between the alleged acts and any resulting

damages. Absent identifiable causation, the RICO claims must be dismissed. *See Allstate Ins. Co. v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49, 59-60 (D. Del. 2008) (dismissing RICO claims for failure to meet Rule 9(b) standard where complaint failed to specifically allege "why Defendants' submission of bills listing [allegedly unnecessary] treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered.").

Apparently Allstate believes these claims were fraudulent because it does not agree with the diagnoses and treatments provided by the Movant medical professionals, and it does not want to pay for treatments which do not fit within the No-Fault fee schedule (despite its legal obligation to do so). Under Michigan law, "[e]xpressions of opinion are not false statements of independently verifiable facts." *Johnson v. Botsford Gen. Hosp.*, 748 N.W.2d 907, 911 n. 1 (Mich. Ct. App. 2008). The mere fact that Allstate believes the amounts billed by Movants are unreasonable does not transmute them into actionable fraud.

Allstate's attempt to allege that every single bill submitted by Movants was fraudulent implies that the No-Fault Act imposes a statutory presumption that a medical provider who submits a bill to an insurer affirmatively represents that the bill is for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."[4] But

---

[4] Mich. Comp. Laws § 500.3107.

12

this turns the No-Fault Act on its head. The No-Fault Act does not create a presumption that submission of a bill constitutes a representation that the billed amount is reasonable, or that the treatment was reasonably necessary. Rather, Section 3107 of the No-Fault Act limits an insurer's duty to pay benefits to those that are reasonable and necessary for an injured person's care, recovery, or rehabilitation. What constitutes reasonable charges for reasonably necessary care is a fact-intensive inquiry and is frequently litigated. Such disputes between insurers and claimants (and their medical providers) lead to countless lawsuits each year in Michigan. Allstate's RICO claim suggests that any time a medical provider's services are found not to be reasonably necessary, or to be unreasonably billed, the provider has committed fraud. This is not the law in Michigan (or in any other state).

Allstate claims that Movant Supplies Plus "never possess[ed] a license to issue [durable medical equipment ("DME")]" and therefore the DME billed was "unlawful and not compensable under the No-Fault Act." Compl. ¶¶ 179-180. Even if these allegations were true (they are not), they would not absolve Allstate of its duty to pay claims. Under Michigan law, the fact that "a particular service is excluded from the scope of the provider's licensed field," standing alone, does not relieve an insurer of its statutory duty to pay benefits. *Psychosocial Service Assoc's, P.C. v. State Farm Mut. Auto Ins. Co.*, 761 N.W.2d 716, 719 (Mich. Ct. App. 2008).

Allstate's inclusion of these allegations, which as a matter of law cannot constitute fraud, in its list of reasons why the bills identified in the exhibits to the Complaint should not be paid, demonstrates why the Complaint fails to satisfy Rule 9(b). Because even as pled many of the claims identified in the exhibits are not fraudulent as a matter of law, Movants have no way of knowing which specific claims, if any, Allstate is alleging were fraudulent. Allstate's vague and conclusory pleading deprives Movants of the notice required to "prepare an informed pleading responsive to the specific allegations of fraud." *U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007). Allstate instead attaches stacks of unpaid claims without any indication of the care provided, associated injuries, or allegations as to why the care provided was inappropriate such that there can be any conclusion as to the alleged misconduct. Such pleading simply does not satisfy the requisite particularity to put Movants on reasonable notice of the claims asserted and should therefore be dismissed.

### C. Allstate Lacks Standing Because it Has not Paid Movants a Single Penny

Under 18 U.S.C. § 1964(c), to have standing for a RICO claim, Allstate must demonstrate that it "has been injured in [its] business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493-99 (1985). However, Allstate has failed to plausibly plead that it has been injured in its business because it has not paid *any* of Movants' claims.

To establish standing for RICO, Allstate must show that it has suffered a tangible loss. *Grantham & Mann, Inc. v. Am. Safety Prods*., Inc., 831 F.2d 596, 604-06 (6th Cir. 1987). Here, much like in *Grantham*, Allstate has failed to allege any tangible injury. Allstate—in a conclusory fashion—alleges that it "has been injured in its business and property by reason of this conspiratorial conduct where Allstate has been induced to make insurance payments." Compl. ¶ 430, 450, 470, 490, 509, 528, 547. Allstate has provided no factual allegations, nor could it, of any such payments made to Movants. The Complaint is devoid of any allegation regarding specific amounts paid. This is because Allstate has not paid a single penny to any of the Movants.[5]

Further, the Sixth Circuit has held that plaintiffs must demonstrate that any injuries to the plaintiff were proximately caused by Defendant's "*conspiracy* to violate section 1962(c)'s substantive provision." *Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835-36 (6th Cir. 2008). This court has held that a showing of a civil conspiracy requires Plaintiffs to show that "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *See Detroit Will*

---

[5] Of note, unlike in other RICO cases in which Allstate attaches damages charts identifying all of the payments issued by Allstate to the RICO defendants (*see, e.g. Allstate Insurance Co., et al v. ZMC Pharmacy, LLC, et al*, Case No. 2:19-cv-13721-LVP-EAS, ECF No. 1-16, PageID.713), Allstate does not provide this Court with a shred of evidence of any payments made to Movants.

*Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 486 N.W.2d 351 (1992)).

Here, Allstate has provided no evidence of a conspiracy between Movants and the other Defendants. As a result, it is impossible for Allstate to demonstrate a conspiracy to commit wire or mail fraud by Movants. And, because Allstate has not established that it has been tangibly injured, Allstate has failed to establish standing for a RICO claim and the claims against Movants should be dismissed.

### D. The Complaint Does Not Plausibly Allege a § 1962(d) Violation

18 U.S.C. § 1962(d) is intended to cover an agreement to violate RICO, not the actual violations themselves. *See Beck v. Prupis*, 529 U.S. 494 (2000). A defendant must "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense …." *See, e.g.*, *Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013). Thus, a plaintiff must plausibly allege a meeting of the minds to facilitate the operation of an enterprise through a pattern of racketeering activity and that the particular defendant agreed that someone would commit two predicate acts. *See*, *e.g.*, *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000). Plausible § 1962(d) allegations are only viable if the underlying RICO allegations (here, action under § 1962(c)) are themselves viable. *See*, *e.g.*, *Efron v. Embassy*

*Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000); *VendMasters,* at \*10; *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224 (3d Cir. 2007).

Here, as discussed above, the Complaint does not plausibly allege a violation of § 1962(c). Therefore, the § 1962(d) allegations must be dismissed. Furthermore, Allstate fails to allege that each Movant agreed to commit at least two predicate acts. Instead, Allstate alleges that Movants "conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation and operation of [each named facility]." (*See, e.g.*, Compl. at ¶ 425).

## II.    The State Law Claims (Common Law Fraud, Civil Conspiracy, Payment Under Mistake of Fact, Unjust Enrichment, and Declaratory Relief) Should be Dismissed

### A. The Court Should Decline Jurisdiction Over the State Law Claims

"When all federal law claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims …." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). Moreover, if dismissal is under 12(b)(6), "there is a strong presumption in favor of dismissing supplemental claims." *Id.*

Here, the RICO claims should be dismissed. If those claims are dismissed, the Court should follow the "strong presumption" in favor of dismissing the supplemental state law claims, including the Counts for common law fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and declaratory relief.

This is particularly appropriate where the state law counts all relate to underlying claims brought under the Michigan No-Fault Act.

### B. The Common Law Fraud and Civil Conspiracy Claims Should be Dismissed for Failure to State a Claim

Even if this Court were to exercise supplemental jurisdiction over the common law fraud and civil conspiracy claims, under any pleading standard—much less the heightened standard for fraud (and conspiracy to commit fraud) under Rule 9(b)—the allegations would fail. Furthermore, the "circumstances of the fraud" must be pled with particularity. *Id.* at 19 (*citing Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988)). As detailed above, the Complaint utterly fails to allege any facts sufficient to meet 9(b) or *Twombly*. There are no non-conclusory allegations of specific misrepresentations by Movants, the where and when of those misrepresentations.

### C. The Payment Under Mistake of Fact Claim Should be Dismissed for Failure to State a Claim

The No-Fault Act requires insurers to pay insurance benefits to persons injured in automobile accidents, without regard to fault. Allstate alleges that the bills submitted to it by Movants were fraudulent because it does not agree with the diagnoses or the amounts billed. However, Allstate is not relieved of its duty to pay benefits simply because it disagrees with submitted claims. The only limitation on Allstate's obligation to pay is that the "[a]llowable expenses are reasonable charges

18

incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation." Mich. Comp. Laws § 500.3107.

Allstate's payment under mistake of fact claim is baseless. Allstate has not paid anything to Movants (and the Complaint does not identify any payments); thus, the claim is frivolous and must be dismissed.

### D. The Unjust Enrichment Claim Should be Dismissed for Failure to State a claim

Allstate's unjust enrichment claim is premised on Movants' alleged "fraudulent misrepresentations." (Compl. at ¶ 574). The elements of an unjust enrichment claim are "the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195, 729 N.W.2d 898, 904 (2006). As discussed above, Allstate has failed to allege any fraudulent act with the particularity required by Rule 9(b). And, because Allstate has not paid any of Movants' claims (and Allstate does not allege any such payments), Movants cannot have received a benefit from Allstate. The unjust enrichment claim must also therefore be dismissed.

### E. The Declaratory Judgment Claim Must be Dismissed because the Substantive Claims Fail

Because Movants are entitled to dismissal of the substantive claims under Rule 12(b)(6), Movants are also entitled to dismissal of the claim for declaratory

relief. *Int'l Ass'n of Machinists and Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).

## III.    The Claims Should be Dismissed for Other Miscellaneous Reasons[6]

### A. Jackson v. Sedgwick

Allstate's RICO injuries arise exclusively from the company's obligation to pay the costs of medical services provided to people injured in automobile accidents—personal injury claims—and thus are not actionable under the RICO statute.

Civil RICO claims can only be pursued for injuries to business or property. 18 U.S.C. § 1964(c). The *en banc* panel in *Jackson v. Sedgwick* affirmed that "personal injuries and any pecuniary losses proximately resulting from a personal injury caused by a RICO violation ... are ... not recoverable … because of the origin of the underlying injury." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565-66 (6th Cir. 2013) *cert. denied,* 134 S. Ct. 2133 (U.S. 2014).

The *Sedgwick* panel was confronted with the question of whether an injured plaintiff can allege RICO claims for a violation of Michigan's Workers' Disability

---

[6] On more than one occasion, Courts in this district have rejected many of the arguments presented in this section and have ruled in favor of insurers. Movants raise the arguments here not simply to preserve the issues for appeal, but because they represent valid reasons for dismissal of the claims against Movants. Notably, Allstate's massive resources have prevented providers from taking their cases to judgment and appealing most of these rulings, so the Sixth Circuit Court of Appeals has not weighed in on many of these holdings.

Compensation Act ("WDCA"). *Id.* at 559-60. The *Sedgwick* plaintiffs argued that RICO applied because they suffered injury to their property that was distinct from their personal injury, where the defendants (the employer, the claims administrator and a doctor who allegedly colluded with the companies) had allegedly conspired to illegally cut-off compensation to which plaintiffs were entitled under the WDCA. *Id.* at 558. The panel rejected the plaintiffs' arguments, concluding:

> [The losses] are not different from the losses the plaintiffs would experience if they had to bring a civil action to redress their personal injuries and did not obtain the compensation from that action they expected to receive. Michigan's decision to create a workers' compensation system does not transform a disappointing outcome in personal injury litigation into damages that can support a RICO civil action, even if Michigan law characterizes the benefits awarded under this system as a legal entitlement. Accordingly, racketeering activity leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to "business or property" under RICO.

*Id.* at 566. The panel further noted that under the argument presented by the plaintiffs in that matter "there is nothing preventing an employer from turning this theory on its ear and accusing employees of a pattern of mail or wire fraud designed to *support* benefits claims." *Id.* at 568 (citation omitted).

The No-Fault Act states that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle...." Mich. Comp. Laws § 500.3105(1). Thus, the

requirement for an insurer to pay benefits—or compensation for medical services—arises solely from personal injury.

Here, Allstate alleges it paid money for the treatment of personal injuries, but made those payments only because of Movants' allegedly improper practices. Again, Allstate hasn't paid anything to Movants and does not allege any specific amounts paid. Even if Allstate had paid a claim, each claim is for the treatment of personal injuries. No personal injury, no obligation to pay.

Allstate's attempted re-characterization of the injury does not change the determinative fact that Allstate's obligation to pay only arose because there was an underlying personal injury. Even accepting Allstate's allegations as true, the conspiracy allegedly functioned to *increase* the dollar amount of personal injury benefits. Thus, irrespective of how the Complaint frames it, Allstate is pursuing litigation based on claims submitted by medical providers for services to people injured in automobile accidents. Allstate's alleged damages are no more injuries to "business or property" than the plaintiffs' injuries in *Sedgwick*.

This litigation is precisely the type of case warned of by the *Sedgwick* panel when it stated that if the failure to pay benefits could support a RICO claim *against* an employer, then another employer could turn the argument "on its ear" and allege that its employees engaged in "a pattern of mail or wire fraud designed to *support* benefits claims." Allstate is trying to turn the *Sedgwick* plaintiffs' discredited

argument on its ear—asserting a RICO claim based on an alleged pattern of racketeering activity designed to support or increase personal injury benefits. But, since the duty to pay arose solely from personal injury, the claim cannot be pursued under RICO.

### B. *Burford* Abstention

Abstention is appropriate under the *Burford* doctrine (*Burford v. Sun Oil Co.,* 319 U.S. 315 (1943)) if: "(1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan,* 300 F.3d 711, 716 (6th Cir. 2002) (citation omitted). Here, both factors apply. The public policy enacted through Michigan's unique insurance code is of clear public import. Federal review of the questions in this case could potentially impair Michigan's efforts to establish a coherent No-Fault system. The No-Fault Act reflects the Michigan Legislature's intent to craft a comprehensive system for the resolution of tort claims arising out of automobile accidents. The Michigan Supreme Court has repeatedly noted the comprehensive nature of the No-Fault Act, stating that it was "designed to cover contingencies that could arise, including…the process for making a claim, the

procedures for investigation by the insurer, and the range of available enforcement tools. All of which are found within the four corners of the [Act]." *Muci v. State Farm Mut. Auto. Ins. Co.*, 732 N.W.2d 88, 94 (Mich. 2007). The system was designed to delicately balance the interests of Michigan's automobile accident victims, their health care providers and automobile insurers. That balance would be upset if insurers were permitted to circumvent the No-Fault Act by discouraging treatment of no-fault claimants through this type of retaliatory lawsuit.

### C. Reverse Preemption

The McCarran-Ferguson Act states that the "business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). Moreover, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance …." 15 U.S.C. § 1012(b).

Michigan has a comprehensive and recently amended statutory scheme governing reasonable and necessary charges in no-fault insurance cases. Payment of insurance benefits is certainly part of the business of insurance. *See*, *e.g.*, *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 514-15 (6th Cir. 2010) (business of insurance includes payment of claims). The application of RICO to this dispute would "invalidate, impair, [and] supersede" Michigan's Insurance Code,

because it would substitute a federal jury's judgment as to "reasonable and necessary" for the judgment of Michigan's Legislature. The Insurance Code does not prescribe civil liability for "unreasonable" charges, which is precisely what Allstate is trying to achieve. Allowing Allstate's claims to proceed would also impair Michigan's Insurance Code, as the claims are designed to intimidate medical providers and to discourage them from providing treatment to persons injured in automobile accidents. It could not be more clear that this lawsuit and others like it are intended to use the federal courts to threaten the ability of injured persons to obtain the benefits guaranteed to them by the Michigan No-Fault Act.

## <u>CONCLUSION</u>

For the reasons stated above, the claims against Movants should be dismissed.

Respectfully submitted,

Dated:  July 17, 2023

**FINK BRESSACK**

By:   /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
*Attorneys for Defendants Lint Chiropractic, P.C., Robert Super, D.C., MI Medical Management, LLC, Diagnostic Chiropractic MI, P.C., and Supplies Plus MI, LLC*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

25