UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY;  and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>LINT CHIROPRACTIC P.C.; MI MEDICAL MANAGEMENT, LLC; DURAMED MI, LLC, SUPPLIES PLUS MI, LLC; DIAGNOSTIC CHIROPRACTIC MI, P.C.; EXCEL MEDICAL GROUP, PLC; AS MEDICAL GROUP, PLC; and ROBERT SUPER, D.C.<br><br>Defendants. | Case No. 4:23-cv-10904-FKB-DRG<br><br>Hon. F. Kay Behm<br>Mag. Judge David R. Grand |

**DEFENDANTS LINT CHIROPRACTIC, P.C., MI MEDICAL MANAGEMENT, LLC, SUPPLIES PLUS MI, LLC, DIAGNOSTIC CHIROPRACTIC, P.C., AND ROBERT SUPER, D.C.'S <u>REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

This lawsuit represents the Plaintiffs' (collectively "Allstate") attempt to bulldoze the Moving Defendants ("Movants") into giving up millions of dollar in compensable claims for treatment rendered to victims of motor vehicle accidents.

As a preliminary matter, undersigned counsel and Movants must advise this Court that Movants' Brief in Support of their Motion to Dismiss ("Movants' Brief") inaccurately states, more than once, that Allstate made no payments to Movants. While Movants and counsel believed those representations to be true at the time they were made, when Allstate filed its Response, Movants learned that Allstate had reason to believe that four payments had been made to Movants. Movants have confirmed that three of the payments identified in Allstate's Response were made. Two of those payments (one for $101.40 and one for $101.64) were sent to Movants' lock box in March, 2022. It appears that the person then-responsible for managing Movants' collections (who is no longer employed by Movants) did not accurately record those payments in Movants' accounting system. One payment ($90.58) appears to be payable to "Lint Revival PT," an entity unknown to Movants. The one larger payment identified by Allstate--$20,724—does not involve a voluntary payment by Allstate.[1] It constitutes the settlement of a litigated matter, in which, after

---

[1] Failure to acknowledge this payment in Movants' Brief arose from a miscommunication between Movants and undersigned counsel. When Movants confirmed for counsel that no payments had been made by Allstate, they believed that only voluntary payments were relevant. Counsel had intended to address all

1

suit was filed, Allstate apparently concluded that certain services provided by Movants were reasonable and necessary. While the fact of these payments does not fundamentally affect the primary arguments advanced in support of the Motion to Dismiss, and while all of these payments together constitute no more than one-half of one percent of the amounts billed to Allstate, undersigned counsel and Movants apologize to this Court and to Plaintiffs' counsel for representing to the Court that no payments were made by Allstate.

Aside from that issue, Allstate spends much of its Response criticizing Movants' counsel rather than refuting the arguments raised in the Motion. Allstate opens its brief by trying to use against Movants arguments that their attorneys made on behalf of Detroit Mayor Mike Duggan and residents of Detroit in a lawsuit to obtain a declaration that the no-fault law then in effect violated due process and equal protection guarantees. ECF No. 39, PageID.745 (citing *Duggan, et al. v. McPharlin*, 18-cv-12639-GCS-SDD (E.D. Mich. Aug. 23, 2018)). It is true, as alleged in the *Duggan* Complaint, that a key failure of Michigan's insurance scheme was the over-treatment and unnecessary treatment which occurred when "[a] small number of lawyers and medical providers aggressively solicit[ed] accident victims and

---

payments, whether made voluntarily or only after litigation was commenced, and Movants' Brief did not limit its representation to voluntary payments.

2

encourage[d] them to seek unnecessary treatment." *Id*. (citing *Duggan*).[2] But, this lawsuit is an example of the other side of the equation. If this case must proceed to discovery, it will be clear that Movants did not abuse the law, and Allstate has zero evidence to the contrary. Allstate apparently hopes it can survive an MTD with a standard set of conclusory allegations, thus forcing Movants to incur significant defense costs, or to capitulate. The message this lawsuit sends to medical providers in Michigan is clear: if you choose to treat the victims of motor vehicle accidents and bill Allstate for services rendered, you will be subject to abusive litigation.

**Lack of Non-Conclusory Factual Allegations.** Allstate has not identified factual, non-conclusory allegations that could support its claims against the Movants. Instead, Allstate merely pleads "[t]hreadbare recitals of the elements," supported, if at all, by "conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *Iqbal*, the Supreme Court set aside as conclusory, allegations that former Attorney General Ashcroft and FBI Director Mueller not only "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to a detention policy "solely on account of [his] religion, race, and/or national origin," and that

---

[2] Allstate's own responsibility for many of the problems with the prior no fault laws—precipitated by its adoption of McKinsey & Company's profit maximizing, customer-adverse strategy of "delay, deny and defend"—is well documented. *See* Jay M. Feinman, *Delay Deny Defend*, Delden Press (2000); https://www.huffpost.com/entry/insurance-claim-delays-industry-profits-allstatemckinsey-company_n_1139102 (last accessed August 23, 2023).

3

Ashcroft was the policy's "principal architect" and Mueller "instrumental" in its execution. *Id*. at 680-81. These allegations were conclusory because they started with an element of the cause of action (for instance, knowledge) and then worked backwards to fill in conclusory facts.

The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 649 (E.D. Mich. 2019). Allstate's allegations regarding the relationship between the allegedly involved entities are deficient. Allstate must allege that each Defendant "participated in the operation or management of the enterprise." *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 792 (6th Cir. 2012). Allstate alleges that "[a]t all relevant times, Lint was operated and conducted by defendants MI Medical, Duramed, Supplies Plus, Diagnostic Chiropractic, Excel, AS Medical and Super." Compl. at ¶ 11. Allstate then alleges that "[a]t all relevant times, MI Medical was operated and conducted by defendants Lint, Diagnostic Chiropractic, and Super." *Id.* at ¶ 15. And that, "[a]t all relevant times Supplies Plus was operated and conducted by defendants Lint, Diagnostic Chiropractic, and Super." *Id.* at ¶ 23.

These allegations are conclusory because Allstate must show that each of the Defendants had some part in conducting the enterprise and Allstate simply alleges that each Defendant "operated and conducted" every other Defendant. Allstate attempts to save its conclusory allegations by pointing to "factual" allegations

4

regarding Duramed. ECF No. 39, PageID.756. These allegations merely demonstrate that Lint referred patients to Duramed and that Allstate disagrees with the Defendants' medical decision making—they add nothing to the conclusory (and nonsensical) allegations that "Lint was operated and conduct by…Duramed" and "Duramed was operated and conducted by…Lint[.]" Compl. at ¶¶ 232-253, 458. Every medical provider in Michigan refers patients to other providers for various reasons. Such referrals are not transformed into racketeering activity merely because an insurer believes they are unnecessary.

Allstate's enterprise allegations are also deficient. Allstate simply alleges that each Defendant entity is an "enterprise" and that some, or all, of the Defendants did business with them. For example, Allstate alleges that "Diagnostic Chiropractic constitutes an enterprise[.]" Compl. at ¶ 473. Allstate then alleges that Lint and Super referred patients to Diagnostic Chiropractic for diagnostic testing in the normal course of business, which Allstate calls fraud because it does not want to pay. Compl. at ¶¶ 492-502. Allstate has merely alleged that Lint and Diagnostic Chiropractic have a business relationship, which they have each pursued in their own self-interest. Aside from the conclusory allegations that every Defendant "operated and conducted" every other Defendant, there are no allegations in the Complaint that establish that Lint and Diagnostic Chiropractic (or any of the other alleged combinations of Defendants and alleged enterprises) associated with each other for

5

the purpose of allegedly defrauding Allstate. Such allegations are insufficient to state a RICO claim. *800537 Ontario, Inc. v. Auto Enterprises, Inc.*, 113 F. Supp. 2d 1116, 1123 (E.D. Mich. 2000).

**Allstate Fails to Allege Fraud with the Particularity Required by Rule 9 (b).** In order to maximize the threat represented by this lawsuit to the Defendant medical providers, Allstate conflates a larger set of claims, which cannot constitute fraud as a matter of law (e.g., claims for "unnecessary" treatment), with a smaller set of claims that Allstate alleges were actually fraudulent (e.g., claims for treatment allegedly not rendered). Allstate alleges that the fraudulent claims are attached to their Complaint as Exhibit 8, which it describes as the "Mail and Wire Fraud Chart". *See, e.g.*, Compl. at ¶ 414; ECF No. 1-1, PageID.128. Allstate also attaches charts of all claims submitted by each of the Defendant medical providers. Compl. Exhibits 1-7. Allstate describes these charts as representing "Patients and Treatment Billed to Allstate." ECF No. 1-1, PageID.127. However, Allstate also alleges that Exhibits 1-7 include "services that were medically unnecessary" and "[services] that were unlawful in relation to several Allstate insureds[.]" *See, e.g.*, Compl. at ¶ 20.

Claims submitted for allegedly "unnecessary" or "unlawful" treatment cannot constitute fraud as a matter of law in Michigan. While Allstate may not have a duty to reimburse claims for such treatment under the Michigan no fault act, that does not transform the act of submitting such a claim into fraud. A decision by a medical

professional that a certain treatment is necessary is an opinion that cannot constitute fraud. *Johnson v. Botsford Gen. Hosp.*, 748 N.W.2d 907, 911 n. 1 (Mich. Ct. App. 2008). Nor has any Michigan court held that submission of a claim for treatment constitutes fraud simply because an insurer believes the provider lacks appropriate licensure. Allstate's conflation of allegedly fraudulent claims with claims that cannot constitute fraud fail to satisfy the requirements of Rule 9(b) because Allstate has denied Defendants "specific notice as to the particulars of their alleged misconduct." *U.S. ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007).

**Defendants' Arguments are not Foreclosed by Any Controlling Authority.** Allstate argues that Movants' Motion must fail because other judges in this District have rejected similar arguments. However, Allstate elides that there is no controlling law compelling such a result. Of course, this Court is not bound by the decisions of other judges in this District. In particular, Allstate claims that Movants' arguments regarding the "Other Miscellaneous Reasons" the Complaint should be dismissed violate Rule 11(b)(2). ECF No. 39, PageID.766. This assertion is baseless. None of these arguments has ever been addressed by the Sixth Circuit and Movants are entitled to preserve them for appeal.

For the reasons stated above and in Movant's Motion and Brief in Support, all claims against Movants should be dismissed.

<table>
<tr><td>Dated:  August 24, 2023</td><td>Respectfully submitted,

**FINK BRESSACK**

By:   /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
*Attorneys for Defendants Lint Chiropractic, P.C., Robert Super, D.C., MI Medical Management, LLC, Diagnostic Chiropractic MI, P.C., and Supplies Plus MI, LLC*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com</td></tr>
</table>