UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE CO. et al.,

           Plaintiffs,                    Case No. 2:23-cv-10904

v.                                Honorable Susan K. DeClercq
                                      United States District Judge

LINT CHIROPRACTIC PC et al.,

           Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 35) AND GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS (ECF NO. 29)

This RICO case is about chiropractors and conspiracies. Plaintiffs Allstate Insurance and its affiliates accuse several medical and chiropractic clinics, their suppliers, and their managers of orchestrating a racketeering scheme to exploit Michigan's no-fault insurance law, MICH. COMP. LAWS § 500.3101 *et seq.*, by generating and submitting hundreds of fraudulent medical bills for reimbursement. Defendants counter that Plaintiffs concocted these allegations to weasel out of paying those bills, and seek a declaration that Plaintiffs owe them the money.

Before this Court are (1) a motion to dismiss filed by Defendants Robert Super, Lint Chiropractic, Diagnostic Chiropractic, MI Medical, and Supplies Plus, and (2) Plaintiffs' motion to dismiss the counterclaims brought by Defendants

Duramed and AS Medical. Both motions test the sufficiency of the allegations under Civil Rule 12(b)(6) and the particularity required under Civil Rule 9(b).

For the reasons explained below, Plaintiffs have sufficiently alleged their claims, but Defendants' counterclaims fall short of providing a factual or legal basis distinct from the original allegations. Thus, Defendants' motion to dismiss is denied, and Plaintiffs' motion to dismiss is granted.

## I. BACKGROUND

For purposes of the motions to dismiss, Plaintiffs' factual allegations must be accepted as true and all reasonable inferences drawn in their favor.[1] *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

At the heart of this case is a man and his machines. Defendant Robert Super, a chiropractor from Florida, exercises "dominion and control" over all units of a medical device called the Nervomatrix. ECF No. 1 at PageID.7–9. The Nervomatrix is used treat "trigger points"—painful areas of knotting or tightness in muscles. *Id.*

---

[1] The counterclaims echo the complaint's allegations, except for the allegation that Plaintiffs have "fabricated a complex relationship" between the Defendants in the complaint. *See* ECF Nos. 24 at PageID.348–49; 26 at PageID.419–20.

at PageID.44. To do so, the Nervomatrix first scans for trigger points (TPII)[2] and then treats them with electrical stimulation ("LINT").[3] *Id.* at PageID.9, 44.

Super proliferated the fraudulent use of Nervomatrix machines at numerous medical clinics in Michigan. *Id.* at PageID.10. Super owned, managed, and controlled Lint Chiropractic, MI Medical, and Supplies Plus, *id.* at PageID.4, 5, 83, 87, 95, and he managed and controlled Diagnostic Chiropractic, *id.* at PageID.6, 99. At these clinics and others, Super implemented a "predetermined protocol" mandating the use of Nervomatrix machines—regardless of medical necessity. *See id.* at PageID.41–42. This protocol involved diagnosing patients vaguely to justify Nervomatrix use, scheduling excessive Nervomatrix treatments, and failing to record patient reactions to those treatments. *See id.* at PageID.42–50. And to maximize bills submitted to Plaintiffs, Defendants intentionally misclassified the

---

[2] Trigger point impedance imaging (TPII) is a noninvasive treatment that uses electrodermal information from active myofascial trigger points (ATPs) to deliver localized neurostimulation. Miguel Gorenberg & Kobi Schwartz, *Imaging-Guided Hyperstimulation Analgesia in Low Back Pain*, 6 J. PAIN RES. 487, 487 (2013).

[3] Localized intense neurostimulation therapy ("LINT"), or hyperstimulation analgesia, involves applying low-rate electrical pulses to peripheral nerve endings at trigger points, stimulating the release of endorphins, serotonin, and cortisol, boasting an 87% efficacy rate. Gorenberg & Schwartz, *supra*, 488.

Nervomatrix as a non–TENS device,[4] circumventing the reimbursement limits that Michigan's No-Fault Act imposes for TENS devices. *See id.* at PageID.10.

Defendants also billed for services not rendered—with Lint Chiropractic billing for treatments at some clinics before Nervomatrix machines were installed there, and Super billing during times that those clinics considered the machines abandoned because they had lost contact with him. *See id.* at PageID.18–19. Further, though the Nervomatrix requires at least ten trigger points before treatment, Defendants often billed with fewer. *See id.* at PageID.20–22. And they submitted falsified and copy-pasted records in support. *Id.* at PageID.35–38.

Defendants also used forged prescriptions and medical records. *Id.* at PageID.29. Numerous prescriptions were signed by doctors who denied referring patients to Lint Chiropractic. *See id.* at PageID.29–30. These prescriptions often appeared on Lint Chiropractic letterhead, despite the originating doctor not using such forms. *Id.* And Lint Chiropractic frequently used preprinted prescription forms with identical signatures, altering only the date and clinic address. *Id.* at PageID.31.

---

[4] The United States Food and Drug Administration classifies the Nervomatrix as a transcutaneous electrical nerve stimulation ("TENS") device, defined as "a device that produces an electric current to stimulate the nerves and reduce pain." *Bickerstaff v. Comm'r of Soc. Sec.*, No. 2:15-CV-10917, 2016 WL 4182756, at *2 (E.D. Mich. July 15, 2016).

Defendants also forged rental agreements for durable medical equipment (DME),[5] billing Plaintiffs for devices that patients never received. *See id.* at PageID.35–37. Some physicians listed on the prescriptions had never evaluated the patients and said their signatures were forged. *See id.* at PageID.34–37.

Defendants arranged for patients to undergo unnecessary ROM and muscle testing at Diagnostic Chiropractic, which fraudulently billed for these services.[6] *Id.* at PageID.99. Proper billing requires detailed justification for each unit of testing, but Diagnostic disregarded these requirements, *id.* at PageID.25, submitting exaggerated charges for services not performed or medically justified, *id.* at PageID.24, 61. For example, Diagnostic billed $10,200 for ROM testing while the standard amount averaged $22.24, *see id.* at PageID.70, and duplicated previously billed services without a physician's orders or any medical purpose, *id.* at PageID.56. For at least two patients, Diagnostic billed Plaintiffs for 34 units of ROM testing in a day—without providing services that would justify billing even 1 unit of ROM testing, or documentation of why ROM testing was warranted. *Id.* at PageID.24–25,

---

[5] Durable Medical Equipment includes devices and supplies prescribed by a healthcare provider for sustained use, typically at home. *Glossary, Durable Medical Equipment (DME)*, HEALTHCARE.GOV, https://www.healthcare.gov/glossary/durable-medical-quipment-dme/ [https://perma.cc/HQR3-BKAX].

[6] Range-of-motion ("ROM") and muscle testing are used to evaluate joint flexibility and muscle strength. ECF No. 1 at PageID.55.

61. Essentially, Diagnostic billed for the same tests for nearly every patient, regardless of age, injury, or comorbidities. *Id.* at PageID.58.

## II. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing

explanations for the defendant's conduct."). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. ANALYSIS

Plaintiffs allege violations of two provisions of the RICO statute, 18 U.S.C. § 1962(c)–(d). *See* ECF No. 1 at PageID.82–108. Plaintiffs have plausibly alleged claims under both provisions.

### A. RICO Claims Under § 1962(c)

A plausible RICO claim under 18 U.S.C. § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

### 1. Conduct of an Enterprise

A RICO "enterprise" may include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition is intentionally broad, designed to stamp out corruption. *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 792 (6th Cir. 2012). In this case, Plaintiffs allege multiple association-in-fact enterprises—"groups of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). These enterprises

"must have at least three structural features: a [common] purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

Liability under 18 U.S.C. § 1962(c) requires that Defendants "participate" in the enterprise's conduct. But "participate" means more than mere words, encouragement, presence, or support; it requires some degree of "operation or management of the enterprise." *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)). Still, this test does not limit liability to those primarily responsible for directing the enterprise's affairs. *Ouwinga*, 694 F.3d at 792 (quoting *Reves*, 507 U.S. at 179). Even secondary roles like "making decisions on behalf of the enterprise or by knowingly carrying them out" support liability. *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008).

Defendants argue that the "enterprise" and "conduct" allegations are "boilerplate and conclusory." ECF No. 35 at PageID.695–97. They are wrong.[7]

Plaintiffs have outlined each enterprise's common fraudulent purpose— generating and submitting bogus medical bills. *See* ECF No. 1 at PageID.1–3, 73.

---

[7] Defendants also assert that Plaintiffs lack factual grounds to allege that "Super owned, managed, and controlled" Lint Chiropractic, MI Medical, Supplies Plus, and Diagnostic. *Id.* at PageID.689, 695. But Super alleged in state court that he was a "principal/owner of Lint Chiropractic, P.C." *See* ECF No. 39-3 at PageID.785. Even so, at the motion-to-dismiss stage, Plaintiffs' allegations must be assumed true, including Super's ownership of Defendants. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Plaintiffs have "delineate[d] the specific roles and relationships of the Defendants." *See Ouwinga*, 694 F.3d at 794–95. And, as follows, they have explained how each Defendant made or executed decisions to further each enterprise's scheme:

- **Lint Chiropractic Enterprise**. Super owned and managed Lint Chiropractic and directed its staff's conduct. ECF No. 1 at PageID.4, 83. He installed Nervomatrix machines there and developed a predetermined protocol to direct patients toward unnecessary treatments, resulting in fraudulent billing. ECF No. 1 at PageID.4, 10, 41, 83. Lint Chiropractic staff followed this protocol, generating fraudulent bills. *Id.* at PageID.83. Diagnostic Chiropractic and Supplies Plus assisted by conducting unnecessary tests, creating false records, and issuing unneeded DME. *See id.* at PageID.24–25, 83.

- **MI Medical Enterprise**. Super also owned and managed MI Medical, implementing the same fraudulent protocol used at Lint Chiropractic. *Id.* at PageID.42, 46, 73–74, 87. Diagnostic conducted unnecessary tests on MI Medical patients to support these bills. *Id.* at PageID.86–88.

- **Supplies Plus Enterprise**. Super managed Supplies Plus, deciding to write prescriptions for unnecessary DME and generating fraudulent bills. *Id.* at PageID.95. Diagnostic assisted by conducting unnecessary tests to support these bills. *Id.* at PageID.94–96.

- **Diagnostic Chiropractic Enterprise**. Super managed Diagnostic Chiropractic, which billed for unnecessary tests arranged by Lint Chiropractic. *Id.* at PageID.99.

Plaintiffs have also established the enterprises' longevity, dating back to at least 2021, ECF No. 1-9 at PageID.176, which is sufficient time for "pursu[ing] the enterprise[s'] purpose[s]," *Boyle*, 556 U.S. at 946.

In sum, Plaintiffs have sufficiently alleged the existence of each enterprise and how Defendants participated in the conduct of those enterprises.

## 2. Pattern of Racketeering Activity

To establish a pattern of racketeering activity, Plaintiffs must demonstrate that Defendants committed at least two predicate acts of racketeering within ten years. 18 U.S.C. § 1961(5). Here, Plaintiffs allege predicate acts of mail and wire fraud. ECF No. 1 at PageID.77–80. Both types of fraud require (1) a scheme to defraud, (2) the use of the mails or wires to further the scheme, and (3) an intent to deprive the victim of money or property. *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006) (citations omitted).

But "a [RICO] pattern is [not] established merely by proving two predicate acts." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236 (1989) (citation omitted). Plaintiffs must also demonstrate that these acts "are related, *and* that they amount to or pose a threat of continued criminal activity." [8] *Id.* at 239 (citation omitted).

Under the relationship element, Plaintiffs must demonstrate that the predicate acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Here, Plaintiffs allege that all the predicate acts of mail and wire fraud served the common purpose of inducing Plaintiffs to pay large sums for bogus medical bills. ECF No. 1 at PageID.19, 74–75, 77–80. These

---

[8] This is the "relationship plus continuity" test. *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 409 (6th Cir. 2012) (quoting *Brown v. Cassens Transp.*, 546 F.3d 347, 355 (6th Cir. 2008)).

allegations sufficiently demonstrate the necessary relationship among the acts. *H.J. Inc.*, 492 U.S. at 240.

For the continuity prong, Plaintiffs may establish either "a 'close-ended' pattern (a series of related predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." *Ouwinga*, 694 F.3d at 795 (quoting *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 409–10 (6th Cir. 2012)). Here, Plaintiffs have sufficiently alleged both patterns. They detail numerous instances of Defendants mailing or wiring fraudulent bills and attached an exhibit listing these instances. *See* ECF No. 1-9 at PageID.176–79. These allegations establish a closed-ended pattern spanning from 2021 to 2022. *See Ouwinga*, 694 F.3d at 795. In addition, Plaintiffs allege that Defendants "continue to submit claims for payment to [Plaintiffs] and, in some instances, continue to commence litigation against [Plaintiffs] seeking to collect on unpaid claims." ECF No. 1 at PageID.79. This conduct poses an ongoing threat, thus establishing an open-ended pattern. *Id.*; *see also State Farm Mut. Auto. Ins. v. Warren Chiro. & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4724829, at *9 (E.D. Mich. Aug. 10, 2015).

Because Plaintiffs have plausibly alleged a pattern of racketeering activity, satisfying the requirements under 18 U.S.C. § 1962(c), Defendants' motion to dismiss on these grounds is denied.

### 3. Predicate Acts and Civil Rule 9(b)

Defendants also argue that the complaint should be dismissed for failing to allege the predicate acts of mail and wire fraud with the specificity required under Civil Rule 9(b). ECF No. 35 at PageID.697–701.

Fraud claims are subject to a heightened pleading standard, requiring plaintiffs to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy this standard, Plaintiffs must specify (1) the time, place, and content of the alleged misrepresentation; (2) the fraudulent scheme; (3) the defendant's fraudulent intent; and (4) the resulting injury. *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 504 (6th Cir. 2007). But conditions of the mind like "intent, knowledge, . . . may be alleged generally." FED. R. CIV. P. 9(b).

Here, Plaintiffs have adequately alleged the fraudulent scheme, detailing how Defendants orchestrated a plan to defraud Plaintiffs with the Nervomatrix and fraudulent medical bills. *See* ECF No. 1 at PageID.7–50. Plaintiffs outlined Defendants' systematic and repetitive conduct, demonstrating fraudulent intent. *Id.* The resulting injury—substantial unjustified payments made to Defendants—is also

specific. *Id.* at PageID.18–28. As for the time, place, and content of the misrepresentations, Plaintiffs provide a comprehensive chart detailing each fraudulent claim, including claim numbers, patient initials, dates, providers, the nature of the misrepresentations, and whether the information was "sent through" mail or wire. ECF No. 1-9 at PageID.176. This level of detail satisfies Rule 9(b)'s requirements. *See Shupe v. Rocket Cos.*, 660 F. Supp. 3d 647, 668 (E.D. Mich. 2023) (explaining that fraud pleadings are demonstrated with the who, what, when, where, and why) (quoting *City of Taylor Gen. Emps. Ret. Sys. v. ASTEC Indus.*, 29 F.4th 802, 810 (6th Cir. 2022)).

Defendants contend that Plaintiffs fail to specify which Defendant caused each mailing or wire communication. ECF No. 35 at PageID.698 (quoting *Gotham Prints, Inc. v. Am. Speedy Printing Ctrs.*, 863 F. Supp 447, 458 (E.D. Mich 1994)).

That argument lacks merit too. In RICO cases involving multiple defendants, Rule 9(b) does not demand the temporal or geographic particulars of each mailing. Instead, it merely requires plaintiffs to delineate the overall fraudulent scheme with adequate particularity. *State Farm Mut. Auto. Ins. v. Physiomatrix, Inc.*, No. 5:12-CV-11500, 2013 WL 509284, at *5 (E.D. Mich. Feb. 12, 2013) (citation omitted); *State Farm Mut. Auto. Ins. v. Universal Health Grp.*, No. 5:14-CV-10266, 2014 WL 5427170 at *3 (E.D. Mich. Oct. 24, 2014) (citation omitted); *State Farm Mut. Auto. Ins. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 788 (E.D. Mich. 2015)

(citation omitted). As explained above, Plaintiffs have done that here. *See* discussion *supra* Section III.A.3.

Moreover, Defendants may be liable for mail and wire fraud even if they did not personally send the fraudulent communications, as long as they were "willful participants in [the] scheme" and the "use of mails and wires by other participants w[as] foreseeable." *United States v. Kennedy*, 714 F.3d 951, 959 (6th Cir. 2013) (citation omitted). Plaintiffs' allegations establish that each Defendant played a role in the fraudulent scheme, making the use of mails and wires by others in furtherance of that scheme foreseeable. *Id.*

Defendants also argue that Plaintiffs' exhibits do not clearly identify which claims are alleged to be fraudulent. ECF No. 35 at PageID.701. Thus, Defendants add, Plaintiffs have deprived them of the notice they need "to prepare an informed pleading responsive to the specific allegations of fraud." *Id.* (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007)).

But Plaintiffs clearly dispute all the claims listed in the exhibits, titled "Chart of Patients and Treatments *at Issue*." *See, e.g.*, ECF No. 1-2 at PageID.131 (emphasis added); *see also Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020). And for each claim, Plaintiffs identified the corresponding defendant, claim number, patient initials, date of service, CPT code billed, and total billed. *Id.* This is more than enough to give notice of the specific misrepresentations

that Plaintiffs allege with respect to each Defendant, and numerous courts have held the same. *See State Farm Mut. Auto. Ins. v. Warren Chiro. & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4724829, at \*8 (E.D. Mich. Aug. 10, 2015) (collecting cases). And, to the extent that Defendants are contesting the fraudulent nature of the claims, their argument goes to the merits of the case—not whether Plaintiffs provided sufficient notice—which is not a proper basis for dismissal until summary judgment or trial. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) ("The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud.").

For these reasons, Plaintiffs have pled their § 1962(c) fraud claims with sufficient particularity under Rule 9(b). Defendants' motion to dismiss on these grounds is denied.

### B. RICO-Conspiracy Claim Under § 1962(d)

Defendants also assert that Plaintiffs have not pled a plausible RICO conspiracy under 18 U.S.C. § 1962(d). ECF No. 35 at PageID.703–04.

Section 1962(d) "requires no 'overt act or specific act'" to further the conspiracy. *United States v. Corrado*, 227 F.3d 543, 553–54 (6th Cir. 2000) (quoting *Salinas v. United States*, 522 U.S. 52, 63 (1997)). Rather, it suffices to demonstrate that defendants objectively manifested an agreement to participate directly or

indirectly in the enterprise's affairs through a pattern of racketeering activity. *See Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Plaintiffs have adequately alleged such an agreement here. The complaint describes how Defendants cooperated to execute the fraudulent billing scheme—including developing and implementing a predetermined protocol to funnel patients through unnecessary medical care and then submitting fraudulent bills to Plaintiffs. *See* discussion *supra* Part I; Section III.A.1. Plaintiffs further corroborated their allegations with exhibits demonstrating that each Defendant directly committed more than two predicate acts. *See* ECF No. 1-9 at PageID.76.

The key is not that each Defendant committed every act of fraud but that they conspired to achieve the fraudulent objectives of the enterprise. As the Supreme Court instructs, a conspiracy may exist even if a conspirator does not agree to commit or facilitate every part of the substantive offense. *Salinas v. United States*, 522 U.S. 52, 63 (1997). Each conspirator may be held accountable for the acts of others that further the agreed-upon scheme. *Id.*

Here, Plaintiffs' complaint details how Defendants agreed to and did participate in the fraudulent scheme by prescribing unnecessary treatments, using fraudulent billing codes, and submitting false claims. ECF No. 1 at PageID.7–50.

This is sufficient to allege a RICO conspiracy under § 1962(d). Therefore, the motion to dismiss Plaintiffs' § 1962(d) RICO-conspiracy claims is denied.

### C. Challenges to State-Law Claims

Defendants next argue that if the RICO claims fail, then so too should the Michigan common-law claims of fraud, civil conspiracy, payment under mistake of fact, and unjust enrichment. ECF No. 35 at PageID.704. Defendants rely on the "strong presumption" favoring dismissal of state claims when all federal claims are dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). But, as previously discussed, Plaintiffs' RICO claims will not be dismissed. *See* discussion *supra* Sections III.A, III.B. Accordingly, that presumption is irrelevant here, leaving no compelling reasons to dismiss the state-law claims. *See Musson Theatrical*, 89 F.3d at 1255; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (noting that supplemental jurisdiction serves principles of judicial economy, convenience, and fairness to litigants).

Defendants separately challenge the fraud and civil-conspiracy claims under Rule 9(b). They contend that Plaintiffs have not satisfied the heightened pleading standard required for fraud claims. *See* ECF No. 35 at PageID.705. Plaintiffs, however, have indeed satisfied this standard by detailing the fraudulent scheme, identifying specific instances of fraud, and explaining the role each Defendant

played. *See* discussion *supra* Sections I, III.A.3. Therefore, this argument is also rejected.

Next, Defendants argue that the claims for payment under mistake of fact and unjust enrichment should be dismissed because Plaintiffs have not reimbursed them for any insurance claims. ECF No. 35 at PageID.705–06. But since Defendants acknowledge that Plaintiffs have, in fact, made some payments, ECF No. 41 at PageID.921–22, this argument too is rejected.

### D. Moving Defendants' Other Challenges

Defendants advance three final arguments for dismissal: (1) the reasoning in *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc); (2) *Burford* abstention; and (3) reverse preemption under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* Each of these arguments fails.

### 1. *Jackson v. Sedgwick*

Defendants argue that because Plaintiffs' claims arise from their obligation to pay for medical services rendered to accident victims, Plaintiffs have essentially suffered personal injuries, which are not actionable under RICO. ECF No. 35 at PageID.707–09 (citing *Jackson*, 731 F.3d at 556). Defendants rely on *Jackson*, in which the Sixth Circuit held that plaintiffs seeking workers' compensation benefits may not pursue RICO claims for personal injuries. *Jackson*, 731 F.3d at 566–67 ("racketeering activity leading to a loss or diminution of benefits the plaintiff expects

- 18 -

to receive under a workers' compensation scheme does not constitute an injury to 'business or property' under RICO").

But Defendants' analogy to *Jackson* is misplaced. In *Jackson*, the plaintiffs sought recovery for personal injuries—that is, injuries to their body "such as a broken bone, cut, or bruise"—rather than for injuries to their business or property. *See id.* at 564 (quoting BLACK'S LAW DICTIONARY 857 (9th ed. 2009)); *see also* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue. . . ."). Here, Plaintiffs are corporations, and so have no bones to break, no cuts to nurse, no bruises to ice. Rather than any physical harm, Plaintiffs allege financial injury due to fraudulent insurance claims, which led them to pay out substantial sums of money. Unlike personal injuries, which are not compensable under § 1964(c), this type of financial injury to business or property is.

In so holding, this Court joins others in this district in rejecting similar arguments and finding that insurers defrauded into making payments have RICO claims. *See, e.g.*, *State Farm Mut. Auto. Ins. v. Vital Cmty. Care, P.C.*, No. 4:17-CV-11721, 2018 WL 2194019, at *6 (E.D. Mich. May 14, 2018); *State Farm Mut. Auto. Ins. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 783–84 (E.D. Mich. 2015).

### 2. *Burford* Abstention

Defendants next argue that this Court should abstain from hearing the case under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* abstention prevents federal interference with state agencies, thereby "avoid[ing] conflict with a state's administration of its own affairs." *Rouse v. DaimlerChrysler Corp.,* 300 F.3d 711, 716 (6th Cir. 2002); *see also Novak v. Federspiel*, 646 F. Supp. 3d 878, 893 (E.D. Mich. 2022) (stating that *Burford* embodies federalism and comity principles).

But the power to dismiss under *Burford* is "an extraordinary and narrow exception" to a district court's duty to hear cases properly before it. *AmSouth Bank v. Dale*, 386 F.3d 763, 783 (6th Cir. 2004) (quoting *Quackenbush v. Allstate Ins.*, 517 U.S. 706, 728 (1996)). Courts need not abstain whenever there is a complex state administrative process at issue, "or even in all cases where there is a potential for conflict with state regulatory policy." *Id.* (quoting *New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 362 (1989) (internal quotations omitted). Instead, the balance of interests "rarely favors abstention." *Id.*

Defendants have not identified any ongoing state administrative proceeding that this case would disrupt. They merely speculate that federal adjudication *might* threaten Michigan's no-fault insurance system. ECF No. 35 at PageID.710–11. Such conclusory assertions are insufficient to justify abstention. Without concrete evidence that the sky is falling, this Court finds no basis for invoking this "extraordinary and narrow exception." *Quackenbush*, 517 U.S. at 728.

### 3. Reverse Preemption

Defendants also invoke the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, arguing that it "reverse preempts" Plaintiff's RICO claims because applying RICO here would improperly interfere with Michigan's regulatory scheme for insurance. ECF No. 35 at PageID.711–12. But this argument misunderstands both the purpose and the actual impact of the McCarran-Ferguson Act.

The Act ensures that federal law does not "invalidate, impair, or supersede" state laws regulating insurance—unless the federal law specifically relates to insurance. *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (quoting 15 U.S.C. § 1012(b)). To determine whether RICO is reverse preempted by the Act, courts apply a three-part test: (1) whether the federal statute specifically relates to the business of insurance; (2) whether the state law was enacted for the purpose of regulating the business of insurance; and (3) whether the application of the federal statute would invalidate, impair, or supersede the state law. *See Riverview Health Ins. v. Med. Mut. of Ohio*, 601 F.3d 505, 514 (6th Cir. 2010); *Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802, 805 (6th Cir. 2006).

Here, RICO does not specifically relate to the business of insurance, so the first element is not met. Second, Michigan's insurance code was enacted to regulate the insurance business. *Basic Prop. Ins. v. Off. of Fin. & Ins. Regul.*, 808 N.W.2d 456, 466 (Mich. Ct. App. 2010) ("[T]he Insurance Code was enacted to ensure that

automobile owners and homeowners could purchase insurance at reasonable and fair rates."). The key issue, then, is whether applying RICO would "invalidate, impair, or supersede" Michigan's insurance laws.

Defendants contend that applying RICO here would create an alternative enforcement mechanism not contemplated by Michigan law, thereby impairing the state's regulatory scheme. ECF No. 35 at PageID.711–12.

That argument, however, misunderstands how RICO and state insurance laws interact. RICO does not impair state insurance regulation if it complements—rather than conflicts with or undermines—the state's efforts to combat insurance fraud. *Humana Inc. v. Forsyth*, 525 U.S. 299, 301 (1999). Applying RICO here would enhance Michigan's regulatory scheme by providing additional tools to combat fraud. While Michigan's insurance code addresses fraud and provides remedies for it, *see* MICH. COMP. LAWS § 500.4511, it does not suggest that these remedies are exclusive, *see* MICH. COMP. LAWS 500.4501 *et seq.*; *cf. State Farm Mut. Auto. Ins. v. Physiomatrix, Inc.*, No. 5:12-CV-11500, 2013 WL 509284, at *3 (E.D. Mich. Feb. 12, 2013) ("[T]here is no legal authority suggesting that the insurance code has abrogated a common law action for fraud."). And applying RICO here would not nullify these provisions, but instead provide a permissible federal complement to state law.

Moreover, courts in this district have consistently recognized that RICO does not preempt state insurance regulations. *Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4724829, at *14 (E.D. Mich. Aug. 10, 2015) (collecting cases).

For these reasons, the motion to dismiss based on reverse preemption under the McCarran-Ferguson Act is denied.

## IV. MOTION TO DISMISS COUNTERCLAIMS

A separate group of Defendants—Excel Medical Group, AS Medical Group, and Duramed—did not join the motion to dismiss. ECF No. 35. Instead, they answered the complaint, and Duramed and AS Medical further filed counterclaims against Plaintiffs for declaratory relief. ECF Nos. 23–26; 33. Specifically, the counterclaims request this Court to declare (1) that Plaintiffs had no valid or reasonable basis to withhold payment of insurance benefits, and (2) that the payments owed are overdue, thereby warranting penalties, interest, and attorneys' fees under the No-Fault Act. ECF Nos. 24 at PageID.349–50; 26 at PageID.419–20.

In response, Plaintiffs filed a motion to dismiss, arguing that the counterclaims are redundant with the complaint's primary claims, and so should be dismissed under the "mirror-image" rule. ECF No. 29 at PageID.444–48.

Federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

sought." Declaratory Judgment Act, 28 U.S.C. § 2201(a). This discretion is broad, permitting courts to decide whether to entertain a declaratory action based on its usefulness in clarifying the legal issues and resolving the case. *See Scottsdale Ins. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

In evaluating redundancy, numerous courts have held that a declaratory-judgment counterclaim should be dismissed if it mirrors the complaint's claims. *Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 405 (6th Cir. 2017) (collecting cases). A counterclaim is a "mirror image" if it "restates the issues in the complaint such that resolving the complaint will necessarily resolve the counterclaim." *Fed. Deposit Ins. v. Project Dev. Corp.*, No. 86-5490, 819 F.2d 289, at *3 (6th Cir. 1987) (unpublished table decision); *Hardiman v. McKeen*, No. 19-12949, 2020 WL 1821025, at *4 (E.D. Mich. Apr. 10, 2020). This situation occurs when there is a "complete identity of factual and legal issues between the complaint and the counterclaim." *Orleans Int'l, Inc. v. Mistica Foods, LLC*, No. 2:15-CV-13525, 2016 WL 3878256, at *3 (E.D. Mich. July 18, 2016) (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975)).

Here, the counterclaims for declaratory relief are indeed mirror images of Plaintiffs' claims. The declarations sought by Counterclaimants—whether Plaintiffs had a valid reason to withhold payments and whether they are entitled to those

payments under the No-Fault Act—are directly addressed by Plaintiffs' fraud allegations. *See generally* ECF No. 1. If Plaintiffs prevail on their fraud claims, it will necessarily mean that Counterclaimants are not entitled to the payments. Thus, the counterclaims serve no purpose. Tellingly, Counterclaimants' statements of facts merely reiterate the dispute over the validity of the fraud allegations, without presenting any new factual or legal basis for declaratory relief. *See* ECF No. 31 at PageID.485–88. This redundancy means that resolving the complaint's fraud allegations will fully resolve the counterclaims. *See Aldens*, 524 F.2d at 51–52.

Because the counterclaims serve no useful purpose, Plaintiffs' motion to dismiss them is granted.

## V. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 35, is **DENIED**.

Further, it is **ORDERED** that Plaintiffs' Motion to Dismiss, ECF No. 29, is **GRANTED**.

**This order does not close the above-captioned case**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 5/30/2024