## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and ALLSTATE
PROPERTY AND CASUALTY INSURANCE
COMPANY

      Plaintiffs,

v.

Case No:  4:23-CV-10904
Hon. Susan K. DeClerq
Magistrate Judge David R. Grand

LINT CHIROPRACTIC PC; MI MEDICAL
MANAGEMENT, LLC; LINT
CHIROPRACTIC II PC; SUPPLIES PLUS MI, LLC;
DIAGNOSTIC CHIROPRACTIC MI, P.C.;
AS MEDICAL GROUP, PLC; COMPREHENSIVE
PAIN MANAGEMENT OF MICHIGAN, LLC;
ROBERT SUPER, D.C.; and ALI SHUKR, M.D.

      Defendants.

_____

## <u>DEFENDANTS COMPREHENSIVE PAIN MANAGEMENT OF MICHIGAN, LLC, ALI SHUKR, M.D., and AS MEDICAL GROUP PLC, 'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF NO. 75)</u>

NOW COME Defendants, COMPREHENSIVE PAIN MANAGEMENT OF

MICHIGAN, LLC, ALI SHUKR, M.D., and AS MEDICAL GROUP PLC, by and

through their attorneys, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, and

for their Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 75)

pursuant to FRCP 12(b)(6), hereby states as follows:

i

As set forth in the accompanying brief in support, Plaintiff's First Amended Complaint fails to state any claim against the aforementioned Defendants for four reasons. First, Allstate's claims of conspiracy fall outside of the civil RICO four-year limitations period. Second, Plaintiffs failed to allege that Comprehensive Pain Management of Michigan, LLC ("CPMM") took or caused any action or omission to constitute such participation in a RICO Enterprise. Third, Plaintiffs otherwise failed to establish a RICO Enterprise with respect to AS Medical Group PLC. Fourth, this Court does not have requisite jurisdiction to hear State Law claims.

Pursuant to Local Rule 7.1(a), undersigned counsel sought opposing counsel's concurrence with this motion and the relief requested via email on December 13, 2024, but concurrence was not obtained.

WHEREFORE, Defendants COMPREHENSIVE PAIN MANAGEMENT OF MICHIGAN, LLC, ALI SHUKR, M.D., and AS MEDICAL GROUP PLC, respectfully request that this Court GRANT their Motion to Dismiss, DISMISSING Plaintiffs' First Amended Complaint (ECF No. 75) in its entirety, with prejudice.

Respectfully submitted:

/s/ Tarik D. Turfe

KASSEM DAKHLALLAH (P70842)
TARIK D. TURFE (P83690)
**HAMMOUD, DAKLALLAH &
ASSOCIATES, PLLC**

Attorney for Defendants CPMM, AS
Medical, and Shukr
6050 Greenfield Rd, Ste 201
Dearborn, MI 48126
(313) 551-3038
tt@hdalawgroup.com

Date: December 16, 2024

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and ALLSTATE
PROPERTY AND CASUALTY INSURANCE
COMPANY

     Plaintiffs,

v.

                                           Case No:  4:23-CV-10904
                                           Hon. Susan K. DeClercq
                                           Magistrate Judge David R. Grand

LINT CHIROPRACTIC PC; MI MEDICAL
MANAGEMENT, LLC; DURAMED MI, LLC;
SUPPLIES PLUS MI, LLC; DIAGNOSTIC
CHIROPRACTIC MI, P.C.; EXCEL MEDICAL
GROUP, PLC; AS MEDICAL GROUP, PLC;
and ROBERT SUPER, D.C.

     Defendants.

_____

**DEFENDANTS COMPREHENSIVE PAIN MANAGEMENT OF MICHIGAN, LLC, ALI SHUKR, M.D., and AS MEDICAL GROUP PLC, 'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF NO. 75)**

1

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED.................................................................3

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...........................4

INDEX OF AUTHORITIES.................................................................................5

     I.     STATEMENT OF FACTS.......................................................1

     II.    STANDARD OF REVIEW .....................................................5

     III.   LAW AND ARGUMENT .......................................................6

          **A. ALLSTATE'S CONSPIRACY ACTION IS TIME-BARRED** 7

          **B. ALLSTATE DID NOT PROPERLY PLEAD A CIVIL RICO CLAIM**................................................................. 10

          1. CPMM Did Not Conduct or Participate in the new "AS Medical Enterprises" Affairs ........................................... 11

          2. Allstate Similarly Failed to Allege the Existence of a RICO Enterprise ..................................................... 14

          3. Allstate's § 1962(d) Claims Similarly Fail................................... 16

          4. This Court has No Supplemental Jurisdiction or Diversity Jurisdiction....................................................... 17

     IV.   CONCLUSION ................................................................19

CERTIFICATE OF SERVICE ...........................................................................20

## STATEMENT OF ISSUES PRESENTED

1. Has Allstate alleged any actual action or omission taken by CPMM to constitute participation in a RICO Enterprise?

Moving Parties' answer:                           No

Plaintiffs' answer:                               Yes

This Court should answer:                         No

2. Has Allstate alleged the existence of any RICO Enterprise relating to AS Medical?

Moving Parties' answer:                           No

Plaintiffs' answer:                               Yes

This Court should answer:                         No

3. Does this Court have supplemental or diversity jurisdiction to hear Plaintiff's remaining claims?

Moving Parties' answer:                           No

Plaintiffs' answer:                               Yes

This Court should answer:                         No

4. Is Allstate's new conspiracy outside of the statute of limitations for civil RICO claims?

Moving Parties' answer:                        Yes

Plaintiffs' answer:                            No

This Court should answer:                      Yes


## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

AS Medical relies upon Fed. R. Civ. P. Rule 12(b)(6) and the additional

authorities and arguments in the accompanying Brief in Support.

## <u>INDEX OF AUTHORITIES</u>

## <u>CASES</u>

*League of United Latin Am. Citizens v. Bredesen,*
    500 F.3d 523, 527 (6th Cir.2007)……………………………………….…6

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,*
    727 F.3d 502, 504 (6th Cir.2013)………………………………………….…6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ……………6

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………..…6

*Rotella v. Wood,*
    528 U.S. 549 (2000)………………..…………………………..……7

*Sims v. Ohio Cas. Ins. Co.,*
    151 Fed.Appx. 433, 435 (6th Cir. 2005)…..………………….…....7

*Bygrave v. Van Reken,*
    No. 99–1702, 2000 WL 1769587, at *3 (6th Cir. Nov. 14, 2000)……......7

*Moon v. Harrison Piping Supply,*
    465 F.3d 719, 723 (6th Cir. 2006)………………..………..……...11

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158 (2001)………………..……..……………………....11

*Reves v. Ernst & Young,*
    *507 U.S. 170, 185 (1993)*………………..……………..………...11, 13

*United States v. Kennedy,*
    714 F.3d 951, 959 (6th Cir. 2013)………………………………..14

*United States v. Chance,*
    306 F.3d 356, 372 (6th Cir.2002)………………..……..……..…..15

*Begala v. PNC Bank, Ohio, N.A.*,
    214 F.3d 776, 781 (6th Cir. 2000)……………………………………………15

*In re ClassicStar Mare Lease Litig.*,
    727 F.3d 473 (6th Cir. 2013)…………………………………………….16

*United States v. Corrado*,
    227 F.3d 543, 553–54 (6th Cir. 2000)………………………………...16

*Heinrich v. Waiting Angels Adoption Servs.*,
    668 F.3d 393, 411 (6th Cir. 2012)…………………………………....16

*Musson Theatrical, Inc. v. Federal Express Corp.*,
    89 F.3d 1244, 1255 (6th Cir. 1996)………………………………...17

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
    556 U.S. 635 (2009)………………...………………...………..…...18

## **RULES and STATUTES**

Fed. R. Civ. P. 12……………………………………………………………… 5, 17

18 U.S.C. § 1962(c)……………………………………………….10, 12, 15, 16

18 U.S.C. § 1962(d)……………………………………………...10, 12, 16

18 U.S.C. §1961(4)…………………………………………...………...14

28 U.S.C. § 1367(a)………………………………………………………...17

28 U.S.C. § 1332……………………………………………….…...17

MCL 500.3142…………………………………………………………....7

MCL 500.3157……………………………………………….…...12

## I.   <u>STATEMENT OF FACTS</u>

In its Complaint (ECF No. 1), Plaintiffs ("Allstate") alleged a grandiose conspiracy theory that is predicated on the allegation that "At all relevant times, AS Medical was operated and conducted by defendants Lint, Excel, and Super" (ECF No. 1, PageID.7 at pp. 35). Underscoring this conspiracy is the ownership, use, and operation of trigger point impedance imaging (TPII) and localized intense neurostimulation therapy (LINT). (*Id.* at PageID.9 at pp. 45). The TPII and LINT services are rendered using a Nervomatrix machine. *Id.* at pp. 47. In further support of the conspiracy, Allstate alleged that Defendant Robert Super testified via sworn affidavit that he "had an exclusive contract that entitled him to 'dominion and control' over all Nervomatrix machines in the United States". *Id.* at pp. 48.

On May 17, 2023, AS Medical delivered a Rule 11 Notice to Allstate that specifically identified the patently false allegations made by Allstate. Before that, on April 27, 2023 respective counsels conducted a pre-notice meet and confer to discuss specifically the lack of a relationship between AS Medical and the Lint Defendants. To no surprise, Allstate refused to amend its Complaint to remove the allegations of conspiracy against AS Medical.

Now, after recent discovery, Allstate moved to amend its Complaint and filed a First Amended Complaint ("FAC") as ECF No. 75. Allstate's FAC walked back the entirety of the "AS Medical Enterprise" alleged in the original Complaint, and

this time, concocted a new "enterprise" that solely exists between AS Medical, its management company (Comprehensive Pain Management of Michigan, LLC, or "CPMM"), and AS Medical's principal owner, Dr. Ali Shukr, M.D. ("Dr. Shukr").

Now, more than 18 months later, Allstate wants to change course and proposes to allege that new parties Dr. Shukr and CPMM operate and conduct AS Medical (See ECF No. 75, PageID.2618). In fact, Allstate has now omitted all allegations of a relationship between the Lint Defendants and AS Medical. See ECF No. 1 and 65-1[1]. Importantly, this is not an alternative pleading. Rather, Allstate has proposed a separate and distinct theory of AS Medical's ownership and operation that directly contradicts its prior Complaint.

See ECF No. 1, PageID.7 at pp. 34-36:

34. AS Medical's member is Ali Shukr, M.D., who is a citizen of the State of Michigan.

35. At all relevant times, AS Medical was operated and conducted by defendants Lint, Excel, and Super.

See also, ECF No. 75, PageID. 2617-2618 at pp. 30-31:

30. AS Medical's member is Ali Shukr, M.D., who is a citizen of the State of Michigan.

---

[1] Glaringly, Allstate has omitted all references to AS Medical being owned, controlled, or operated by any one or all of the Lint Defendants, and vice versa. See, for example, the excerpts from Plaintiffs' Complaint as compared to the FAC cited above, and also, ECF No. 1, PageID.9 at pp. 45 as compared to ECF No. 75, PageID. 2621 at pp. 49; and ECF No. 1, PageID.10 at pp. 53 as compared to ECF No. 75, PageID. 2626 at pp. 72.

31. At all relevant times, AS Medical was operated and conducted by defendants Shukr and CPMM.

Furthermore, Allstate has even omitted AS Medical from having any relationship with the Lint Defendants in the causes of action in its FAC. In its Complaint, Allstate alleged that AS Medical was involved in the Lint Enterprise (Counts I and II), the Excel Enterprise (Counts XI and XII), and the AS Medical Enterprise (Counts XIII and XIV). (ECF No. 1). In the FAC, Allstate has now removed AS Medical from the Lint Enterprise (Counts I and II), removed the Excel Enterprise altogether, and regurgitated the AS Medical Enterprise with the inclusion of Shukr and CPMM and the exclusion of Defendants Lint, Excel, and Super. (ECF No. 75, PageID.2727-2730).

Allstate's change of course is problematic for three reasons. First, Allstate previously relied on the allegations of a conspiracy between the Lint Defendants and AS Medical in its original Complaint and took additional affirmative positions before this Court predicated on the existence of that "conspiracy". See ECF No. 39, PageID.749:

> "**Two entities used for this purpose were defendants** Excel Medical Group, PLC ("Excel") and **AS Medical Group, PLC**…The [Lint] Defendants involvement with Excel and AS Medical is expressly alleged in the Complaint, which quotes Super's own sworn testimony that he had an exclusive contract that entitled him to "dominion and control" over all Nervomatrix machines in the United States, meaning Excel and **AS Medical could only obtain a Nervomatrix machine**

**and bill for TPII and LINT by working with Super and Lint.**" (emphasis added).

Now, it is impossible for Allstate to take these positions where their own FAC omits the reference to this "conspiracy". In one quick instance, Allstate asks the Court, and AS Medical, to conveniently forget about that specific "conspiracy". In the same breath, Allstate wants to pursue these new parties under a new "conspiracy" between AS Medical, its management entity, and its owner. (See ECF No. 75, Counts XI-XII).

Second, Allstate, at all relevant times to this Complaint, knew of the existence of Dr. Ali Shukr and CPMM. The mere attempt at including these parties in this lawsuit is purely dilatory. Indeed, Allstate knew of the inner mechanisms and relationships of AS Medical by virtue of the No-Fault claims and associated "provider" lawsuits filed by AS Medical against Allstate in Michigan's state courts. See ECF No. 39, PageID.446 where Allstate cites to certain state court matters between these two parties, many of which were filed in 2022. In **ECF No. 75-7, PageID.2810**, Allstate knew about AS Medical's No-Fault claims for Allstate's insureds as early as May 8, 2020[2]. This date is the date by which the statute of limitations on this civil RICO claim began to run.

---

[2] Note that although the date of service was May 8, 2020, Allstate's discovery responses confirmed that the claim was submitted to Allstate on June 5, 2020. Defendants will produce such discovery responses subject to the requirements of the Court or Allstate in responding to this motion.

Additionally, Allstate had specific knowledge as to Dr. Shukr at all relevant times. In just one example, *Kashif Crosby v. Allstate Insurance Company, et al* (Wayne County Circuit Court Case No. 22-014078-NI), plaintiff sued Allstate for first-party No-Fault benefits including the payment of bills incurred by AS Medical for benefit of plaintiff. In that case, Allstate (via the same counsel as it has in this case) noticed the deposition of AS Medical's Dr. Ali Shukr on May 25, 2023. (ECF No. 70-2 PageID.2480-2488). Naturally, Allstate's attorneys took extreme liberties with the scope of Dr. Shukr's deposition and spent most (if not all) of the time conducting a fact deposition for this federal lawsuit. Of course, Allstate uncovered no further support for its conspiracy and based on this fishing expedition, the Wayne County Circuit Court Hon. Muriel D. Hughes granted AS Medical (a non-party to that case) a protective order that limited Allstate to "the topics of AS Medical Group PLC's medical treatment of Plaintiff Kashif Crosby and any billing for services rendered to Kashif Crosby ONLY". *Id.*

## II.   <u>STANDARD OF REVIEW</u>

Defendants bring the instant Motion seeking relief under Fed. R. Civ. P. 12(b)(6), arguing that AS Medical has failed to state a claim upon which relief can be granted.

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual

allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 504 (6th Cir.2013).

## III.   <u>LAW AND ARGUMENT</u>

Allstate's FAC fails for four reasons. First, Allstate's claims of conspiracy fall outside of the civil RICO four-year limitations period. Second, Plaintiffs failed to allege that Comprehensive Pain Management of Michigan, LLC ("CPMM") took or caused any action or omission to constitute such participation in a RICO Enterprise. Third, Plaintiffs otherwise failed to establish a RICO Enterprise with respect to AS

Medical Group PLC. Fourth, this Court does not have requisite jurisdiction to hear State Law claims.

### A. ALLSTATE'S CONSPIRACY ACTION IS TIME-BARRED

A civil RICO action has a four-year limitations period. *Rotella v. Wood*, 528 U.S. 549 (2000). The four-year period begins to run when a party knew, **or through exercise of reasonable diligence should have discovered,** that the party was injured by a RICO violation". *Sims v. Ohio Cas. Ins. Co.*, 151 Fed.Appx. 433, 435 (6th Cir. 2005) citing *Rotella*. See also *Bygrave v. Van Reken,* No. 99–1702, 2000 WL 1769587, at *3 (6th Cir. Nov. 14, 2000) (noting that a plaintiff need not discover both the RICO "injury" and the "pattern of racketeering activity" in order to trigger the four-year statute of limitations).

Discovery in this case has uncovered that AS Medical submitted its first claim to Allstate for LINT and TPII treatment on June 5, 2020 for patient J.O. On this date, Allstate knew of AS Medical's request to receive payment of personal protection insurance (PIP) No-Fault benefits under Michigan law, namely MCL 500.3142. Specifically, this law states that an amount not supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. MCL 500.3142 (2). In other words, Allstate had 30 days to either pay AS Medical for J.O.'s PIP benefits, or it could have requested additional reasonable proof. Allstate did neither.

Instead, in typical insurance company fashion, Allstate issued boilerplate denials of this and virtually every other AS Medical claim. However, Allstate was held to the affirmative duty under Michigan law to investigate AS Medical's J.O. PIP claim within thirty days, giving Allstate an operative end-date of July 5, 2020. Of course, if Allstate followed Michigan law (and exercised reasonable diligence as proffered by *Sims* above), it would have (and should have) determined any fraudulent nature of J.O.'s treatment at AS Medical within this time frame. It chose not to. Notwithstanding Allstate's lack of diligence, July 5, 2020 is when the limitations period on its conspiracy allegations with respect to AS Medical begins to run.

Granted, Allstate did file this lawsuit on April 19, 2023 (ECF No. 1). They may point to the fact that this date is within four years of the operative date stated above. However, as established above, in this FAC Allstate alleges a completely new and completely different conspiracy theory as it did in its original Complaint. Indeed, this new "AS Medical Conspiracy" does not contain any same element from the old "AS Medical Conspiracy" alleged back on April 19, 2023. Therefore, this FAC must be treated as a separately pleaded complaint for purposes of the statute of limitations.

Furthermore, Allstate may contend that it only discovered the existence of CPMM and Ali Shukr (or CPMM and Shukr's involvement in AS Medical) throughout discovery in this case. But again, as stated above, both contentions would

be false. Naturally, Allstate would learn of CPMM and Ali Shukr's involvement in the 30-day PIP window described above. Additionally, AS Medical's J.O. claim (as well as almost every other claim submitted to Allstate as part of this case) resulted in the filing of a state-court lawsuit for unpaid PIP benefits where Allstate always took discovery and had the opportunity to conduct depositions inquiring into the matters concerning AS Medical, such as CPMM and Dr. Shukr.

And record evidence in this case establishes such discovery conducted within the four-year limitations period for a civil RICO claim. See the above, and ECF No. ECF No. 70-2 PageID.2480-2488, as just one example of discovery conducted by Allstate which naturally discusses CPMM and Dr. Shukr.

Therefore, it is clear that Allstate knew about Dr. Shukr and CPMM well before this FAC was filed. At the time of the Complaint, Allstate consciously made the decision to not file suit against these two known parties. This decision also was made by Allstate at the 26(f) stage, where in the parties' Joint Rule 26(f) Case Management Report and Proposed Discovery Plan, the parties (including Allstate) did not then expect to file motions to amend the pleadings. (ECF No. 49 ,PageID.1141).

Thus, Allstate brings this FAC with dilatory motives to somehow attempt to state some reshuffled conspiracy claim against AS Medical. Importantly, at every juncture in this case, Allstate has chosen not to bring suit against Dr. Shukr and

9

CPMM. Now, that choice has changed, apparently, due to Allstate's review of (1) the discovery responses of AS Medical and (2) the deposition of Michael Papio, the principal of CPMM. However, neither of these discovery events caused any development of fact not previously known by Allstate with respect to either Dr. Shukr or CPMM, Allstate knew about these parties all along. Allstate therefore should be held strictly responsible for bringing this internal new "AS Medical Conspiracy" claim within the four-year limitations period of a civil RICO claim. It has not in this case, and all such claims must be dismissed with prejudice.

### B. ALLSTATE DID NOT PROPERLY PLEAD A CIVIL RICO CLAIM

Even if this Court finds the FAC to be timely pled, Allstate still suffered additional pleading deficiencies. First, Allstate failed to allege that CPMM actually took any action, or made any omission, subject to the new "AS Medical Conspiracy" found in Counts XI and XII of the FAC. Second, Allstate failed to allege a RICO Enterprise. Third, Allstate failed to provide a basis that vests this Court with supplemental or diversity jurisdiction.

Here, Allstate has pled its Count XI as a RICO conspiracy under 18 U.S.C. § 1962(c) and its Count XII as a RICO conspiracy under 18 U.S.C. § 1962(d). As this Court previously cited, a plausible RICO claim under 18 U.S.C. § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

Additionally, Allstate must prove two additional elements. First, Allstate must allege

and prove the existence of two distinct entities: (1) a "person" and (2) an "enterprise"

that is not simply the same "person" referred to by a different name. *Cedric Kushner*

*Promotions, Ltd. v. King*, 533 U.S. 158 (2001). The Supreme Court also has said that

liability "depends on showing that the defendants conducted or participated in the

conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst &*

*Young,* 507 U.S. 170, 185 (1993).

    1. <u>CPMM Did Not Conduct or Participate in the new "AS Medical</u>
        <u>Enterprises" Affairs</u>

In their FAC, Allstate alleges that "CPMM and Shukr intentionally caused to

be prepared, faxed, and mailed false medical documentation by AS Medical, or knew

that such false medical documentation would be faxed and mailed in the ordinary

course of AS Medical's business, or should have reasonably foreseen that the

mailing and faxing of such false medical documentation by AS Medical would

occur, in furtherance of the Count XI defendant's scheme to defraud". (ECF No. 75

at PageID. 2727, pp. 570). In other words, Allstate is alleging that CPMM and Shukr

either prepared, faxed, or mailed (themselves) false medical documentation on

behalf of AS Medical's PIP claims, knew that such false material would be mailed

by AS Medical, or should have known these facts. Allstate goes on to allege that

"CPMM and Shukr managed and controlled AS Medical and were responsible for all actions taken by AS Medical and its staff". *Id.* at PageID. 2728, pp. 573.

Notably, these allegations are the only allegations in the entirety of the FAC that allege CPMM's conduct or participation in the new "AS Medical Enterprise's" affairs under § 1962(c). Of course, Allstate's § 1962(d) claims regurgitate the existence of a conspiracy to violate § 1962(c) amongst these parties, again with no additional allegations of any other actions or omissions that would be violative of either section.

For purposes of CPMM, Allstate's FAC fails on its face. It is impossible for CPMM to have conducted or participated in the new "AS Medical Enterprise's" affairs because CPMM legally cannot participate in the preparation, faxing, or mailing of any "false medical documentation". AS Medical is a licensed medical facility in the State of Michigan. Under MCL 500.3157, a physician…[or] clinic…that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance…may charge a reasonable amount for the treatment…Very clearly, Michigan law limits who may submit PIP claims for reimbursement of medical treatment charges to only (as appropriate in this case) a physician or a medical clinic. CPMM is neither such a physician nor is it a clinic. Therefore, CPMM is never situated to prepare or send out any such bills on behalf of AS Medical.

12

The testimony of Michael Papio of AS Medical confirmed that CPMM is the "managing entity" for AS Medical. In other words, CPMM manages the day to day business, non-medical, operations of AS Medical. The medical operations are left to (as required by Michigan law) the supervision and conduct of a licensed physician. For AS Medical, that individual is Dr. Ali Shukr. When AS Medical generates claims for insurance submission, AS Medical either sends those claims out itself in its usual, ordinary course of business, or it engages a professional medical biller to do the same. Nonetheless, CPMM is never the entity involved in such medical billing – both by practice but more importantly, by operation of law.

The Supreme Court in *Reves* held that the defendant "must participate in the operation or management of the enterprise itself". *Reves*, 507 U.S. 170, 185. "To participate…in the conduct of…affairs" must be narrower than "to participate in affairs". *Id.* In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. *Id.* at p. 179. Therefore, Allstate would have to have some specific allegation of an action of CPMM that would evidence their direct participation in the operation, management, or control of the alleged action that violates the RICO statute. Here, the only allegation is the submission of "false medical documentation", which CPMM does not and cannot do under Michigan law.

13

Allstate may additionally point to previous arguments made by the Lint Defendants (ECF No. 35) and the Court's previous denial of a Motion to Dismiss (ECF No. 46), citing *United States v. Kennedy*, 714 F.3d 951, 959 (6th Cir. 2013). In this argument, the Court still found the Lint Defendants potentially liable for mail and wire fraud so long as they were "willful participants in the scheme" and the "use of mails and wires by other participants was foreseeable". However, the arguments here are distinguishable from the Lint Defendants' previous arguments.

In ECF No. 35, the Lint Defendants previously moved for violations of Rule 9(b)'s particularity requirement in pleading claims. Here, CPMM maintains that Allstate cannot allege any predicate acts, willful participation, or foreseeable knowledge of the same given the Michigan statutes cited above. For purposes of CPMM, Allstate's FAC fails on its face. It is impossible for CPMM to have conducted or participated in the new "AS Medical Enterprise's" affairs because CPMM legally cannot participate in actions that Allstate complains about in FAC ECF No. 75 at PageID. 2727, pp. 570.

### 2. Allstate Similarly Failed to Allege the Existence of a RICO Enterprise

A RICO "enterprise" may include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In order to establish the existence of an "enterprise" under § 1962(c), a plaintiff is required to prove: (1)

an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. *United States v. Chance,* 306 F.3d 356, 372 (6th Cir.2002).

Without any legitimate conduct or participation of CPMM, Allstate is left to allege that AS Medical and Shukr (the only two legal entities that can submit claims under the No-Fault Act) are engaged in an enterprise to submit false medical documentation through the U.S. Mail. Allstate fails to allege in its FAC that (a) the new "AS Medical Enterprise" actually constitutes an enterprise, and (b) the new "AS Medical Enterprise" was separate and distinct from the pattern of racketeering activity in which it engaged.

As cited above, the Supreme Court agreed that § 1962(c) requires a distinctness element in the establishment of an enterprise. The Sixth Circuit has coined this principle as the "non-identity" or "distinctness" requirement. *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000). "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise.". *Id.* As the Sixth Circuit explained in *Begala*, "Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise

that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself". *Id.* at 781.

"If RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473 (6th Cir. 2013). The long history of case law interpreting these "non-identity" or "distinctness" questions need not be considered in this situation, because the fact-set is very simple. Where it is impossible for CPMM to conduct or participate in the mail/wire fraud scheme alleged in the new "AS Medical Enterprise", Allstate is left to allege that AS Medical and its sole member, Dr. Shukr, conspired with itself. This allegation violates the non-identity or distinctness requirement of § 1962(c) and the binding precedent of *In re ClassicStar Mare* and *Cedric Kushner*.

   3.  <u>Allstate's § 1962(d) Claims Similarly Fail</u>

Section 1962(d) "requires no 'overt act or specific act' " to further the conspiracy. *United States v. Corrado*, 227 F.3d 543, 553–54 (6th Cir. 2000). Rather, it suffices to demonstrate that defendants objectively manifested an agreement to participate directly or indirectly in the enterprise's affairs through a pattern of racketeering activity. *See Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 411 (6th Cir. 2012).

16

Again, no such agreement, express or implied, can be alleged between the offending corporation (AS Medical) and its sole principal member (Dr. Shukr). Notably, Allstate completely wiped all allegations concerning AS Medical and any other defendant in this case. Allstate is left to allege that AS Medical simply violated RICO rules by continuing its own course of business: providing medical treatment and mailing in insurance claims. There is no conspiracy that Allstate is able to allege, especially no conspiracy against AS Medical and its principal member.

### 4. This Court has No Supplemental Jurisdiction or Diversity Jurisdiction

"When all federal law claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims…" *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). If dismissal is under 12(b)(6), as is requested here, "there is a strong presumption in favor of dismissing supplemental claims." *Id.*

Supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367(a). There, a federal court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Id.* However, the district courts may decline to exercise supplemental jurisdiction over claims under subsection (a) if:

**(1)** the claim raises a novel or complex issue of State law,

17

**(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

**(3)** the district court has dismissed all claims over which it has original jurisdiction, or

**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction

28 U.S.C. § 1367(c).

This Court should exercise its discretion in dismissing the supplemental state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009). Here, all factors warrant this Court's dismissal of FAC Counts XIII-XVII.

With the remaining claims, this Court would be called upon to make decisions of exclusive state law considerations – decisions on No-Fault matters that are already being litigated in State Court by Allstate and AS Medical. This Court would effectively be duplicating each individual No-Fault action, additionally prejudicing Defendant AS Medical by forcing it to litigate these matters twice. Allstate is already presently aggressively defending each No-Fault matter in state court, arguing against the same matters pled in this case and its FAC. Indeed, common law fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and declaratory relief are all matters available to Allstate in each No-Fault matter presently filed in state court. There is no compelling reason for this Court to force such redundant litigation, especially when the state courts are the most well equipped to handle Allstate's lofty

questions of medical efficacy, billing, treatment procedures, and eligibility for claims reimbursement under Michigan's No-Fault Act.

Finally, Plaintiffs appeared to move alternatively under diversity jurisdiction 28 U.S.C. § 1332. However, any claim for diversity jurisdiction fails where Plaintiff failed to allege, on the face of the FAC, an amount in controversy in excess of $75,000.00. Allstate's only claim of money damages is in the form of its request for compensatory damages against the defendants "for the amounts Allstate has paid to them and paid because of them and their conduct". However, Allstate has not paid AS Medical any sums in said claim settlements greater than $10,000.00, total.

Allstate remains the company that on TV, tells its consumers that they are in "Good Hands". However, if and when its consumers need timely and efficient No-Fault benefits, those same "Good Hands" only deliver denial letters.

## IV.   <u>CONCLUSION</u>

WHEREFORE, Defendants COMPREHENSIVE PAIN MANAGEMENT OF MICHIGAN, LLC, ALI SHUKR, M.D., and AS MEDICAL GROUP PLC, respectfully request that this Court GRANT their Motion to Dismiss, DISMISSING Plaintiffs' First Amended Complaint (ECF No. 75) in its entirety, with prejudice.

Respectfully submitted:

/s/ Tarik D. Turfe

KASSEM DAKHLALLAH (P70842)
TARIK D. TURFE (P83690)

19

**HAMMOUD, DAKLALLAH &
ASSOCIATES, PLLC**
Attorney for Defendants CPMM, AS
Medical, and Shukr
6050 Greenfield Rd, Ste 201
Dearborn, MI 48126
(313) 551-3038

Date: December 16, 2024             tt@hdalawgroup.com

**LOCAL RULE CERTIFICATION:** I, Tarik D. Turfe, certify that this document
complies with Local Rule 5.1(a), including: double-spaced (except for quoted
materials and footnotes); at least one-inch margins on the top, sides, and bottom;
consecutive page numbering; and type size of all texts that is no smaller than 10-1/2
characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).
I also certify that this document is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

By: */s/ Tarik D. Turfe*
Tarik D. Turfe (P83690)
Counsel for Defendants
Dated: December 16, 2024             tt@hdalawgroup.com
**CERTIFICATE OF SERVICE**

I certify that on December 16, 2024, I filed a copy of the foregoing with the
Clerk of the Court using the electronic filing system which will send electronic
notification of this filing to all parties.

*/s/ Tarik D. Turfe*
Tarik D. Turfe, Esq.,