UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,
et al.,

        Plaintiffs,

v.

AS MEDICAL GROUP, PLC, et al.,

        Defendants.
_____/

Case No. 2:23-cv-10904

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS (ECF No. 86)**

In this civil RICO case, Plaintiffs Allstate Insurance Company and its affiliates have sued a medical clinic, AS Medical Group, PLC, the doctor who runs it, Ali Shukr, M.D., and the clinic's management company, Comprehensive Pain Management of Michigan ("CPMM"), LLC (collectively "Defendants"). Allstate accuses Defendants of orchestrating a racketeering scheme to exploit Michigan's no-fault insurance law, MICH. COMP. LAWS § 500.3101 *et seq.*, by generating and submitting fraudulent medical bills for reimbursement.

Defendants now move to dismiss Allstate's claims against them, arguing that the RICO claims are barred by the applicable statute of limitations, or alternatively that Allstate failed to allege any plausible RICO claim. But as explained below, Defendants' motion will be denied.

## I. BACKGROUND

### A. Factual Background

The following factual allegations come from Allstate's amended complaint. ECF No. 75. At the motion-to-dismiss stage, these allegations must be accepted as true, and all reasonable inferences must be drawn in Allstate's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Defendant AS Medical Group, PLC is a Michigan-based professional limited liability company that provides medical treatment to patients. ECF No. 75 at PageID.2617. Its sole member is Defendant Ali Shukr, M.D. *Id.* Along with Dr. Shukr, Defendant Comprehensive Pain Management of Michigan ("CPMM"), LLC,[1] manages and operates AS Medical. *Id.* at PageID.2618. CPMM and Dr. Shukr control AS Medical and are responsible for all actions taken by AS Medical and its staff. *Id.* at PageID.2728.

According to Allstate, Defendants engaged in a comprehensive scheme to defraud Allstate through the operation of AS Medical. *Id.* at PageID.2613. That scheme centered around the use of a medical device called the Nervomatrix. *Id.* at PageID.2620. The Nervomatrix is used treat "trigger points"—painful areas of knotting or tightness in muscles. *Id.* at PageID.2624. To do so, the Nervomatrix first

---

[1] CPMM's sole member is Michael Papio. ECF No. 75 at PageID.2618.

scans for trigger points in a process called trigger point impedance imaging ("TPII")[2] and then treats those trigger points in a process called localized intense neurostimulation therapy ("LINT").[3] *Id.* at PageID.2620. Allstate says that TPII and LINT are "experimental, unproven, and medically unnecessary." *Id.*

Nevertheless, AS Medical began billing for TPII and LINT after its practice manager, Michael Papio, was introduced to the treatments by former codefendant Robert Super.[4] *Id.* at PageID.2622. To generate as many bills as possible for these services, CPMM and Dr. Shukr worked to implement a "predetermined treatment protocol" related to LINT and TPII. *Id.* at PageID.2618–20, 2622–26, 2697–700. Under this predetermined protocol, patients allegedly were prescribed excessive LINT and TPII regardless of medical necessity. *Id.* at PageID.2660–62.

Defendants also allegedly billed for services not rendered. For example, despite AS Medical billing Allstate for TPII and LINT starting on April 15, 2021, Papio did not actually procure a Nervomatrix machine for AS Medical's use until

---

[2] Trigger point impedance imaging (TPII) is a noninvasive treatment that uses electrodermal information from active myofascial trigger points (ATPs) to deliver localized neurostimulation. Miguel Gorenberg & Kobi Schwartz, *Imaging-Guided Hyperstimulation Analgesia in Low Back Pain*, 6 J. PAIN RES. 487, 487 (2013).

[3] Localized intense neurostimulation therapy ("LINT"), or hyperstimulation analgesia, involves applying low-rate electrical pulses to peripheral nerve endings at trigger points, stimulating the release of endorphins, serotonin, and cortisol, boasting an 87% efficacy rate. *Id.* at 488.

[4] Super, a chiropractor from Florida, was alleged to exercise "dominion and control" over all Nervomatrix machines in the United States. ECF No. 75 at PageID.2625.

July 2021. *Id.* at PageID.2623. Allstate also alleges other instances of Defendants billing for services not rendered, *see id.* at PageID.2637–41, 2645, using forged and fabricated records, *id.* at PageID.2655–57, and billing for unnecessary and excessive treatment, *id.* at PageID.2661–61, 2667–68, 2670–71.

With respect to CPMM and Dr. Shukr's roles in carrying out AS Medical's fraudulent activities, Allstate alleges that CPMM and Dr. Shukr each intentionally caused AS Medical to prepare, fax, and mail false medical documentation. *Id.* at PageID.2727. They also falsified and forged AS Medical records. *Id.* at PageID.2653, 2656–57, 2728. CPMM and Dr. Shukr also submitted fraudulent medical records, bills, and invoices that created the appearance of injury and permitted AS Medical to continue billing for unlawful and medically unnecessary services. *Id.* at PageID.2728.

### B. Procedural Background

Allstate initially brought suit on April 19, 2023, against a whole slate of defendants,[5] the majority of which have been dismissed from the case due to settlement. *See* ECF Nos. 1; 64; 118. Only AS Medical—not CPMM or Dr. Shukr—was originally named as a defendant in April 2023. ECF No. 1.

---

[5] These dismissed parties include Robert Super, D.C., Lint Chiropractic, PC, MI Medical Management, LLC, Supplies Plus MI, LLC, Diagnostic Chiropractic MI, P.C., Excel Medical Group, PLC, Duramed MI, LLC, and Lint Chiropractic II PC. *See* ECF Nos. 1; 64; 118.

However, after discovery began, Allstate moved to amend its complaint in late 2024. ECF No. 65. Allstate sought to name CPMM and Dr. Shukr as defendants and include new allegations about their role in managing and operating AS Medical. *Id.* at PageID.2240–41. After full briefing, *see* ECF Nos. 70; 71, and a November 11, 2024, hearing on the motion, this Court granted Allstate's motion to amend, *see* ECF No. 74. Allstate filed its amended complaint on November 18, 2024. ECF No. 75.

The amended complaint asserts RICO claims under 18 U.S.C. § 1962(c)–(d) against CPMM and Dr. Shukr for their role in running AS Medical. *Id.* at PageID.2727–30. Allstate alleges that AS Medical constitutes an "enterprise" as defined by the RICO statute, and that CPMM and Dr. Shukr conspired to use the AS Medical enterprise to prepare, fax, and mail false medical documentation, which in turn induced Allstate to pay large sums of money for bogus treatments. *Id.*

The amended complaint also requests declaratory relief and asserts several state-law claims against CPMM, Dr. Shukr, and AS Medical. *See id.* at PageID.2730–36.

In December 2024, Defendants moved to dismiss Allstate's amended complaint. ECF No. 86. Allstate responded, ECF No. 87, but Defendants never filed a reply. A hearing is not necessary to resolve the motion. *See* E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439. The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. DISCUSSION

Defendants move to dismiss all of Allstate's claims against them. ECF No. 86. First, they argue that Allstate's RICO claims should be dismissed because they are barred by the applicable statute of limitations, or alternatively because Allstate's allegations fail to state a claim. *Id.* at PageID.3059–69. Second, they argue that should the RICO claims be dismissed, this Court should decline to exercise supplemental jurisdiction over Allstate's state-law claims. *Id.* at PageID.3069–71.

### A. RICO Claims

*1. Statute of Limitations*

Defendants first argue that Allstate's RICO claims are barred by the applicable statute of limitations. ECF No. 86 at PageID.3059–62.

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). That limitations period begins to run "when a party knew, or through exercise of reasonable diligence should have discovered" the injury underlying the claim. *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood*, 528 U.S. 549, 553–55 (2000)).[6] This is known as the injury-discovery rule. *Rotella*, 528 U.S. at 553.

---

[6] In *Rotella*, the Supreme Court clarified the accrual rules for civil RICO claims. 528 U.S. at 553–55. At one time, the circuit courts had taken "[t]hree distinct approaches" to the question of when the statute of limitations begins to run. *Id.* at 553. Some circuits "applied an injury discovery accrual rule," which started the

Here, Defendants argue that the limitations period began to run on July 5, 2020. ECF No. 86 at PageID.3060. They reach this conclusion by pointing to the date that AS Medical supposedly submitted its first LINT and TPII-related claim to Allstate—June 5, 2020. According to Defendants, Allstate had 30 days from then to investigate whether the claim was supported by "reasonable proof" and to pay if so. *See* MICH. COMP. LAWS § 500.3142(2). Thus, Defendants figure that if Allstate had investigated the claim with reasonable diligence, it could have discovered any alleged fraud by the close of that 30-day period (i.e., by July 5, 2020). ECF No. 86 at PageID.3060.

But there are good reasons not to credit this argument at the motion-to-dismiss stage. To start, a Rule 12(b)(6) motion "is generally an inappropriate vehicle for

---

clock "when a plaintiff knew or should have known of [the] injury." *Id.* Other circuits "applied the injury and pattern discovery rule . . . under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity." *Id.* And one circuit applied the "last predicate act" rule, under which "the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern." *Id.* at 554. At the time *Rotella* was decided, however, the Court had already rejected the last-predicate-act rule. *Id.* (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)).

Ultimately, the *Rotella* Court settled on the injury-discovery rule, rejecting the injury-and-pattern discovery rule as unsound. *Id.* at 555. The Court worried that the injury-and-pattern discovery rule could theoretically permit RICO plaintiffs to bring claims for injuries that happened too long in the past. *See id.* This included situations where, for example, a plaintiff discovered an injury a decade ago but only discovered the pattern of racketeering activity that caused the injury only one year ago. *See id.* In light of these concerns, the Court held that "discovery of the injury, not discovery of the other elements of a claim" starts the clock. *Id.*

dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). That is especially true "when there are disputed factual questions related to the accrual date." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 464 (6th Cir. 2016). "Examples of such disputed factual questions include claims that the defendant fraudulently concealed facts, thereby preventing the plaintiff from learning of its injury, and complex issues about whether information in the plaintiff's possession sufficed to alert it of the claim." *Id.* (citations omitted).

Here, there are disputed factual questions related to the accrual date, which precludes dismissal at this juncture. At the outset, Allstate disputes that the single medical bill that AS Medical relies upon would have "sufficed to alert [Allstate]" of a RICO injury. *Id.* (citations omitted); ECF No. 87 at PageID.3088–89 (arguing that Allstate could not have "identified any fraud by AS Medical at all, much less the existence of a complex scheme involving multiple individual and entities, from review of a single bill"). This alone counsels against dismissal.

But even if it were proper to calculate the accrual date from when AS Medical first billed Allstate for LINT and TPII treatment, the parties appear to dispute what that specific date was. Defendants claim that ongoing discovery revealed the date to be June 5, 2020. *See* ECF No. 86 at PageID.3059. Allstate, on the other hand, alleges the date to be nearly a year later—April 15, 2021. ECF No. 75 at PageID.2623 ("AS

Medical began billing Allstate for TPII and LINT on April 15, 2021."). Barring contrary record evidence,[7] Allstate's version of events must be credited at the motion-to-dismiss stage. *See Lambert*, 517 F.3d at 439. And ultimately, this factual dispute shows that this argument is best resolved at summary judgment. *Am. Premier Underwriters*, 839 F.3d at 464.

*2. RICO Claims Under § 1962(c)*

Defendants also challenge the sufficiency of Allstate's RICO allegations under 18 U.S.C. § 1962(c). They primarily argue that CPMM did not participate in the conduct of the alleged AS Medical enterprise. ECF No. 86 at PageID.3063–66.

A plausible RICO claim under § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

To be liable under § 1962(c), a defendant must "participate" in the enterprise's conduct. But "participate" means more than mere words, encouragement, presence,

---

[7] In fairness, Defendants state in a footnote that they could produce discovery responses confirming that June 5, 2020, is the correct date they first billed Allstate. ECF No. 86 at PageID.3056 n.2. But regardless of the correct date, there remain "complex issues" about whether this bill alone sufficed to alert Allstate that it had a claim against Defendants. *Am. Premier Underwriters*, 839 F.3d at 464. And thus, regardless of the correct date, dismissal would still not be proper at this juncture.

or support; it requires some degree of "operation or management of the enterprise." *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)). Even so, liability is not limited to those primarily responsible for directing the enterprise's affairs. *Ouwinga*, 694 F.3d at 792 (quoting *Reves*, 507 U.S. at 179). Even secondary roles like "making decisions on behalf of the enterprise or by knowingly carrying them out" support liability. *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008).

Here, Defendants argue that CPMM could not have participated in the AS Medical enterprise's conduct—submitting false medical documents—because under Michigan law, "CPMM legally cannot participate" in preparing, faxing, or mailing such documents. ECF No. 86 at PageID.3064. According to Defendants, Michigan law permits only licensed physicians or medical clinics to submit these types of medical bills for reimbursement. *Id.* (citing M<span>ICH</span>. C<span>OMP</span>. L<span>AWS</span> § 500.3157). And CPMM is neither. *Id.* at PageID.3064–65. Rather, CPMM is only the "managing entity" for AS Medical, responsible for overseeing AS Medical's day-to-day business operations. *Id.* at PageID.3065. CPMM, Defendants argue, is therefore *never* involved in medical billing. *Id.* Thus, CPMM could not have participated in the billing-related fraud scheme at the heart of the AS Medical enterprise. *Id.* at PageID.3065–66.

But this argument fails both logically and legally. Logically, Defendants' reasoning is circular at best, effectively boiling down to "I didn't do it because it was illegal for me to do." This reasoning assumes the conclusion—that CPMM played no role in the fraudulent scheme—by invoking the legal limits of CPMM's authority. But just because an entity is prohibited from engaging in certain conduct does not mean it is incapable of doing so. And whether CPMM is authorized to submit medical bills is a distinct question from whether CPMM in fact did so as part of the alleged enterprise. After all, why else do courts exist, if not because people often do exactly what they are not allowed to do? All of this is to say, CPMM cannot escape liability by simply pointing out its alleged actions were illegal.

Further, even if CPMM did not submit the allegedly fraudulent medical bills itself, it still could have caused or directed AS Medical and its staff to prepare and submit them. Allstate certainly alleges as much. *See* ECF No. 75 at PageID.2622– 23, 2727 (detailing CPMM's alleged role in the fraudulent scheme). And even these types of "secondary roles" count as participation under the RICO statute. *See Fowler*, 535 F.3d at 418. Indeed, a defendant like CPMM may be liable for mail and wire fraud, even if it did not send the fraudulent communications itself, so long as it was a willful participant in the scheme, and the use of the mails and wires by other participants was foreseeable. *United States v. Kennedy*, 714 F.3d 951, 959 (6th Cir. 2013). And here, Allstate's allegations establish that each Defendant, including

CPMM, played a role in the fraudulent scheme, making the use of mails and wires by others in furtherance of that scheme foreseeable. *See id*. Therefore, Allstate has sufficiently alleged that CPMM participated in the AS Medical enterprise's conduct.

Nonetheless, Defendants also argue that the alleged AS Medical enterprise violates RICO's "distinctness" requirement, which states that "a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000). In so arguing, Defendants assume that CPMM did not participate in the enterprise's conduct. Defendants say that without any conduct or participation from CPMM, the alleged enterprise consists only of AS Medical and its sole member, Dr. Shukr, making it non-distinct. ECF No. 86 at PageID.3066–68.

But as explained above, this Court has rejected Defendants' argument that CPMM did not participate in the AS Medical enterprise. And with CPMM remaining, Defendants' "distinctness" argument necessarily fails. That is because CPMM is a separate legal entity from AS Medical, and CPMM's sole member (Michael Papio) is different from AS Medical's sole member (Dr. Shukr). ECF No. 75 at PageID.2617–18. There is therefore no distinctness concern with the AS Medical enterprise as Allstate alleges it. *See Begala*, 214 F.3d at 781.

In sum, Defendants' motion to dismiss Allstate's RICO claims under § 1962(c) will be denied.

### 3. RICO Claims Under § 1962(d)

Defendants also argue that Allstate's RICO-conspiracy claims under § 1962(d) should be dismissed. Defendants, relying on the same premise (i.e., that CPMM did not participate in the enterprise's conduct), argue that AS Medical and Dr. Shukr could have not conspired with one another, given that they are effectively the same entity. *Id.* at PageID.3068–69.

But again, this Court has rejected Defendants' attempts to excise CPMM from the AS Medical enterprise, so this argument necessarily fails too. Defendants' motion to dismiss Allstate's § 1962(d) claims will therefore be denied.

### B. State-Law Claims

Finally, Defendants argue that if Allstate's federal RICO claims are dismissed, then this Court should decline to exercise supplemental jurisdiction over Allstate's state-law claims. ECF No. 86 at PageID.3069–71. But because Plaintiffs' federal RICO claims remain, this Court will retain supplemental jurisdiction over Plaintiffs' state-law claims. *See* 28 U.S.C. § 1367.

### IV. CONCLUSION

In short, Allstate's claims against Defendants will proceed, but Defendants may re-raise their statute-of-limitations argument at summary judgment.

Accordingly, it is **ORDERED** that Defendants' motion to dismiss Plaintiffs' first amended complaint, ECF No. 86, is **DENIED**.

> _/s/Susan K. DeClercq_
> SUSAN K. DeCLERCQ
> United States District Judge

Dated: July 21, 2025